## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 15, 2014

Lyle W. Cayce
Clerk

————

13-40884

————

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ROGELIO TERAN-SALAS, also known as Armando Teran-Salas,

Defendant - Appellant

————

Appeal from the United States District Court
for the Southern District of Texas

————

Before DAVIS, SMITH, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Rogelio Teran-Salas appeals the district court's application of a sixteen-level sentence enhancement based on its holding that a prior conviction for possession with intent to deliver a controlled substance under Texas law qualified as a drug trafficking offense and an aggravated felony. For the following reasons, we AFFIRM.

## FACTS AND PROCEEDINGS

On April 30, 2013, Teran-Salas was indicted on one count of being an alien found unlawfully present in the Unites States after deportation in violation of 8 U.S.C. § 1326(a) and (b). He pleaded guilty to this count without a plea agreement. The Probation Office prepared a Presentence Investigation

No. 13-40884

Report ("PSR"), and assessed a base offense level of 8 pursuant to U.S.S.G. § 2L1.2(a). It identified a 2011 Texas conviction for possession with intent to deliver between four and 200 grams of cocaine. Finding that the conviction qualified as a "drug trafficking offense" imposing a sentence of greater than thirteen months, the PSR recommended a 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i). The PSR also determined the applicable statutory maximum term of imprisonment to be 20 years, presumably based on a finding that Teran-Salas's prior Texas conviction qualified as an "aggravated felony" under 8 U.S.C. § 1101(a)(43).

Teran-Salas submitted a supplemental objection to the PSR, arguing that his prior Texas conviction did not qualify as a "drug trafficking offense" under U.S.S.G. § 2L1.2(b)(1)(A) or an "aggravated felony" under 8 U.S.C. § 1101(a)(43). He argued that the 16-level enhancement was inapplicable because the Texas offense of possession with intent to *deliver* a controlled substance includes the act of "administering," whereas the guidelines' definition of a drug trafficking offense describes "the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2, cmt. n.1(B)(iv); *see* Tex. Health & Safety Code §§ 481.002(14), 481.112(a). According to Teran-Salas, the available state court documents did not preclude the possibility that he had been convicted of possession with intent to *administer* a controlled substance.

At sentencing, Teran-Salas again objected to the 16-level enhancement. Overruling the objection, the court stated that it would "employ a common-sense approach given that this is an enumerated offense and find that the Texas Possession with Intent to Deliver[] statute is sufficiently narrow to encompass the generic contemporary meaning of such term." After subtracting three points based on Teran-Salas's acceptance of responsibility, the court calculated a total offense level of 21 and a criminal history category of VI. It

found that his criminal history was overrepresented and therefore departed downward to a criminal history category of IV. The district court considered an imprisonment range of 57 to 71 months and sentenced Teran-Salas to 57 months imprisonment. Teran-Salas appeals.

## STANDARD OF REVIEW

"We review the district court's interpretation and application of the sentencing guidelines *de novo* and its findings of fact for clear error." *United States v. Baker*, 742 F.3d 618, 620 (5th Cir. 2014). Whether a prior conviction qualifies as a drug trafficking offense under the federal sentencing guidelines or as an aggravated felony under 8 U.S.C. § 1326(b)(2) is a legal question that we review de novo. *See United States v. Rodriguez*, 711 F.3d 541, 548 (5th Cir. 2013) (en banc).

## DISCUSSION

On appeal, Teran-Salas repeats his challenges to the district court's determination that his 2011 Texas conviction qualified as either a "drug trafficking offense" under § 2L1.2 of the guidelines or an "aggravated felony" under 8 U.S.C. § 1326(b)(2). He argues that the Texas statute criminalizes a broader set of conduct than that covered by either phrase. Specifically, the Texas statute criminalizes the "administering" of drugs, which is not covered by either of the two relevant sentencing provisions. Teran-Salas reasons that, because the state court documents do not preclude the possibility that his Texas conviction was for possession with the intent to administer a controlled substance in a manner that does not also constitute dispensing or distributing,

No. 13-40884

the government did not meet its burden of proving he was convicted of either a drug trafficking offense or an aggravated felony.[1]

The government responds that the federal and state definitions are essentially identical, and that a drug trafficking offense under the federal guidelines encompasses possession with the intent to administer in the manner Teran-Salas hypothesizes. We hold that, although Texas's statutory framework leaves open the theoretical possibility that a defendant can be convicted under Texas Health & Safety Code § 481.112(a) for conduct that would not qualify as a federal drug trafficking offense, Teran-Salas fails to establish a realistic probability that Texas would apply its statute in such a manner.

## I. Categorical and Modified Categorical Approaches

When determining whether a prior conviction qualifies as a level-enhancing offense under the guidelines, courts employ the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575, 602 (1990). "[W]e examine the elements of the offense, rather than the facts underlying the conviction or the defendant's actual conduct, to determine whether" the enhancement applies. *United States v. Carrasco-Tercero*, 745 F.3d 192, 195

---

[1] The Immigration and Nationality Act defines "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101 (a)(43)(B). Section 924(c) of Title 18 defines a drug trafficking crime as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." 18 U.S.C. § 924(c)(2). Under the Controlled Substances Act, it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). This wording tracks the relevant parts of the guidelines definition for "drug trafficking offense." *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iv). Other than Teran-Salas's 2011 conviction, the parties do not mention another conviction for an aggravated felony. We thus resolve both of Teran-Salas's challenges to the district court's judgment using the same analysis.

(5th Cir. 2014) (alteration in original) (internal quotation marks omitted). We then "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.,* the offense as commonly understood." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). "[T]he offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013). State and federal offenses are only categorical matches when a conviction under the state offense "necessarily involved . . . facts equating to [the] generic [federal offense]." *Id.* (alterations in original) (quoting *Shepard v. United States*, 544 U.S. 13, 24 (2005) (plurality opinion)) (internal quotation marks omitted).

Although the categorical approach resolves most enhancement issues, courts employ a "modified categorical approach" when the prior conviction is for violating a "divisible statute," which is one that sets out one or more offense elements in the alternative. *Descamps*, 133 S. Ct. at 2281. If one of the alternative elements is a categorical match for an element in the generic offense, but another alternative element is not, courts may look at a limited class of documents to determine which alternative element formed the basis of a defendant's prior conviction. *Id.* Courts may consider only the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. After reviewing these documents, the court can then compare the actual offense elements for which the defendant was convicted with the elements of the generic crime. *Descamps*, 133 S. Ct. at 2281.

Pursuant to the Texas statute under which Teran-Salas was convicted in 2011, "a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance." Tex. Health & Safety Code § 481.112(a). The Texas code defines "deliver" as "to

transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia." *Id.* § 481.002(8). In a separate definition, the code provides that distribute means "to deliver a controlled substance other than by administering or dispensing the substance." *Id.* § 481.002(14). Accordingly, one can possess with the intent to deliver by possessing with the intent to either distribute, dispense, or administer. *See Santoscoy v. State*, 596 S.W.2d 896, 899 (Tex. Crim. App. 1980) ("Delivering . . . is divided into three forms: administering, dispensing, and distributing. Every delivery must be in one of those three forms . . . .").[2]

In comparison, the commentary to the federal sentencing guidelines defines a drug trafficking offense as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, *distribute*, or *dispense*." U.S.S.G. § 2L1.2 cmt. n.1(B)(iv) (emphases added). This definition does not include possession with the intent to administer, but "administering" does appear in the federal definition of "dispensing":

> The term "dispense" means to deliver a controlled substance to an ultimate user or research subject *by, or pursuant to the lawful*

---

[2] Under Texas's definitions, "administer" means "to directly apply a controlled substance by injection, inhalation, ingestion, or other means to the body of a patient or research subject by: (A) a practitioner or an agent of the practitioner in the presence of the practitioner; or (B) the patient or research subject at the direction and in the presence of a practitioner." Tex. Health & Safety Code § 481.002(1). "Dispense" is "the delivery of a controlled substance in the course of professional practice or research, by a practitioner or person acting under the lawful order of a practitioner, to an ultimate user or research subject. The term includes the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for delivery." *Id.* § 481.002(12).

*order of, a practitioner,* including the prescribing and *administering* of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery. The term "dispenser" means a practitioner who so delivers a controlled substance to an ultimate user or research subject.

21 U.S.C. § 802(10) (emphases added).

Under the federal scheme, any administering of a controlled substance that falls under the federal definition for "dispense" must be "by, or pursuant to the lawful order of, a practitioner." *Id.* As to a practitioner's agent, the "lawful order" language in the federal definition for "dispense" is absent from Texas's definition. Instead, the agent can administer by applying a drug in the *presence* of a practitioner. This allows for the theoretical possibility that a defendant can be convicted under Texas law for administering in a way that is not dispensing under the federal guidelines.

Section 481.112(a) and the commentary to § 2L1.2 thus set forth similar but not verbatim lists of drug-related offenses. Because § 481.112(a) criminalizes discrete acts—manufacturing, delivering, and possessing with intent to deliver—it is divisible. We thus apply the modified categorical approach and "look beyond the statute to certain records made or used in adjudicating guilt to determine which subpart of the statute formed the basis of the conviction." *United States v. Castaneda*, 740 F.3d 169, 172 (5th Cir. 2013) (internal quotation marks omitted). Based on Teran-Salas's Texas indictment, we know that his conviction was for "knowingly possess[ing], with intent to deliver, a controlled substance, namely, Cocaine, in an amount of four grams or more but less than 200 grams."

## II. Realistic Probability

Having narrowed Teran-Salas's Texas offense to possession of more than four grams of cocaine with intent to deliver, we now determine whether, given Texas's definition of "deliver," such a violation necessarily constitutes a drug trafficking offense under the federal sentencing guidelines. *See Moncrieffe*, 133 S.Ct. at 1685 ("We know from his plea agreement that Moncrieffe was convicted of the last of these offenses . . . . We therefore must determine whether possession of marijuana with intent to distribute is 'necessarily' conduct punishable as a felony under the [Controlled Substances Act]."). We apply a common-sense approach and hold that, based on the elements of his conviction, Teran-Salas does not establish a realistic probability that Texas would prosecute his crime under an "administering" theory in a way that does not also constitute either "dispensing" or "distributing" under the federal sentencing guidelines.

"When an indictment is silent as to the offender's actual conduct . . . , we must ensure that the 'least culpable act constituting a violation of that statute constitutes' a drug trafficking offense under the Guidelines." *United States v. Sandoval-Ruiz*, 543 F.3d 733, 735 (5th Cir. 2008) (quoting *United States v. Gonzalez-Ramirez*, 477 F.3d 310, 316 (5th Cir. 2007)); *see also Moncrieffe*, 133 S. Ct. at 1684. But the Supreme Court has warned that focusing on the minimum conduct criminalized "is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Moncrieffe*, 133 S. Ct. at 1684–85 (quoting *Gonzales v. Duenas–Alvarez,* 549 U.S. 183, 193 (2007)); *accord Carrasco-Tercero*, 745 F.3d at 198; *see also United States v. Villeda-Mejia*, 559 Fed. App'x 387, 389 (5th Cir. 2014) (per curiam). "To show [a] realistic probability, an offender . . . must at least point to his own case or other cases in which the

state courts in fact did apply the statute in the special . . . manner for which he argues." *Carrasco-Tercero*, 745 F.3d at 198 (alterations in original) (quoting *Duenas–Alvarez*, 549 U.S. at 193) (internal quotation marks omitted); *accord United States v. Garcia-Figueroa*, 753 F.3d 179, 187 (5th Cir. 2014).

Teran-Salas argues that the available state documents do not preclude the possibility that his conviction was for possession with the intent to administer in a non-dispensing context—that is, administering without the lawful order of a practitioner. His reply brief describes the following hypothetical situation where a defendant is administering but not dispensing:

> For example, imagine the scenario where, at the direction of a sports team's physician, and in the physician's presence, a trainer injects a player with non-medically necessary steroids. Because the delivery of the steroids was not by the physician, or pursuant to his lawful order, it would not constitute "dispensing"; but it would constitute "administering."

Although Teran-Salas describes a theoretical possibility that the Texas statute criminalizes conduct that would not qualify as a drug trafficking offense, there is not a realistic probability that Teran-Salas was prosecuted for engaging in medical care or research that involved administering cocaine in amounts greater than four grams.

In *Ruiz-Sanchez*, this court held that a district court did not plainly err in applying a 16-level drug trafficking enhancement based on a prior conviction under an Illinois statute similar to § 481.112(a). *United States v. Ruiz-Sanchez*, No. 12-40199, 2014 WL 2925157, at *1 (5th Cir. June 30, 2014) (per curiam) (unpublished).[3] The *Ruiz-Sanchez* court rejected the argument that the Illinois statute criminalized conduct not qualifying as a drug trafficking

---

[3] The relevant Illinois statute provides that "it is unlawful for any person knowingly to . . . possess with intent to manufacture or deliver, a controlled substance." 720 Ill. Comp. Stat. 570/401. Illinois's definitions for "deliver," "distribute," and "administer" are essentially identical to the definitions in the Texas statute. *See* Ill. Comp. Stat. 570/102(b), (h), (r).

offense—specifically, administering a controlled substance—because he could not point to an Illinois case applying the statute in an "administering" situation.   2014 WL 2925157 at \*1.   It explained that "[a] 'theoretical possibility' that a statute encompasses other types of conduct that would not qualify is insufficient to avoid application of the enhancement."   *Id.* (citing *Carrasco-Tercero*, 745 F.3d at 197–98).   Similarly, in *Villeda-Mejia*, this court rejected the same argument in a case involving a similar Washington statute. 559 F. App'x at 388–89 (affirming district court's application of drug trafficking enhancement under plain error review).   The *Villeda-Mejia* court explained that because the defendant "ha[d] not pointed to a Washington case applying this statute in an 'administering' situation," it was "far from clear that the Washington statute encompasses 'administering.'"   *Id.* at 389; *see also Carrasco-Tercero*, 745 F.3d at 195, 197–98 (affirming, upon de novo review, district court's sentence enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) for a prior conviction for a "crime of violence" because defendant could not demonstrate a "realistic probability").   Like the defendants in *Ruiz-Sanchez* and *Villeda-Mejia*, Teran-Salas does not identify any case that applied § 481.112(a) in such a manner.[4]

In Texas, "'[a]dminister' means to directly apply a controlled substance by injection, inhalation, ingestion, or other means to the body of a patient or research subject" while being either a practitioner, an agent in his presence, or "a patient or research subject at the direction and in the presence of a practitioner."   Tex. Health & Safety Code § 481.002(1).   As noted above, the indictment for Teran-Salas's prior conviction charged him with "knowingly

---

[4] Teran-Salas cites one Texas case, *Santoscoy*, for the proposition that Texas would apply § 481.112(a) in an administering context.   But *Santoscoy* involved dispensing drugs, not administering them.   596 S.W.2d at 899–900.

possess[ing], with intent to deliver, a controlled substance, namely, Cocaine, in an amount of four grams or more but less than 200 grams." It is not a realistic probability that someone would engage in medical care or research that involved administering cocaine in such amounts. Assuming this is even a possible scenario, it is even less likely that one would "administer" this quantity of cocaine in such a way that would not also be dispensing—specifically in the presence of a practitioner, but not at his lawful order. Even without considering the drug type or quantity, conviction under the administer prong is not a realistic probability because no previous Texas case has involved a conviction under this prong.

We hold that the district court was correct in determining that Teran-Salas's Texas conviction was both a drug trafficking offense and an aggravated felony. Based on the elements of his conviction—knowingly possessing between four and 200 grams of cocaine with intent to deliver—Teran-Salas does not establish a realistic probability that Texas would prosecute under an "administering" theory in a way that does not also constitute either "dispensing" or "distributing" under the federal sentencing guidelines.[5]

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's sentence.

---

[5] Accordingly, the prior conviction must also be an aggravated felony under 8 U.S.C. § 1326(b)(2). *See supra* n.1.

11