# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-40276

United States Court of Appeals
Fifth Circuit

**FILED**

March 2, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

BERTINO SELVAN-CUPIL,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:12-CR-1698

Before STEWART, Chief Judge, and SOUTHWICK and COSTA, Circuit
Judges.

PER CURIAM:*

The district court applied a sentencing enhancement to Bertino Selvan-Cupil's illegal reentry conviction based on a prior North Carolina drug offense. In an example of how complex the law surrounding a single Guideline enhancement can be, Selvan-Cupil challenges the enhancement on three grounds. He contends that the North Carolina drug statute encompasses

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-40276

controlled substances not typically prohibited as drug trafficking offenses; that the North Carolina statute allows convictions for merely administering a drug, which does not constitute trafficking; and that his North Carolina offense was not a felony.

## I.

Selvan-Cupil pleaded guilty to being unlawfully present in the United States following removal. The Presentence Investigation Report (PSR) identified two North Carolina convictions that could serve as a basis for applying the section 2L1.2(b)(1) enhancement based on prior drug trafficking felonies. The PSR recommended applying a 16-point enhancement based on Selvan-Cupil's 2007 conviction for conspiracy to traffic in cocaine because the sentence for that offense exceeded 13 months. *See* U.S.S.G. § 2L1.2(b)(1)(A). It also took the position that, absent application of the greater enhancement, a 12-point enhancement would apply based on a 2004 conviction for selling a schedule II controlled substance because the sentence for that offense was less than 13 months. *See* U.S.S.G. § 2L1.2(b)(1)(B).

Selvan-Cupil objected to the proposed enhancement, arguing that his North Carolina convictions were not felony drug trafficking offenses and that there was no showing that he was convicted of a drug trafficking offense or was sentenced to a term of imprisonment that exceeded 13 months.

At the brief sentencing hearing, the district court sustained the defendant's objection to the 16-level enhancement but applied the 12-level enhancement. The court then sentenced Selvan-Cupil within the Guidelines range to a sentence of 46 months.

## II.

Although Selvan-Cupil contends there is some uncertainty about which North Carolina conviction the district court relied on to support the 12-point enhancement, our review of the record leaves little doubt that it was the 2004

No. 13-40276

"selling" conviction. The district court voiced its concern that the 2007 conspiracy conviction did not qualify as a drug trafficking offense and then characterized the 12-point enhancement as the "fallback." And given the different sentences for the prior offenses, only the 2004 conviction supports the 12-point enhancement the district court applied. *Compare* U.S.S.G. § 2L1.2(b)(1)(A), *with* U.S.S.G. § 2L1.2(b)(1)(B). Finally, Selvan-Cupil states in his reply brief that he has no objection to this court reviewing his appeal in terms of whether the 2004 conviction supported the enhancement.

We thus turn to the merits of Selvan-Cupil's challenge to the enhancement. The Guidelines provide that the offense level for Unlawfully Entering or Remaining in the United States should be increased by 12 levels if the defendant "previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less." U.S.S.G. § 2L1.2(b)(1)(B). The Application Notes define "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2, cmt. n.1(B)(iv).

## A.

Selvan-Cupil first argues that his 2004 conviction does not qualify as a "drug trafficking offense" because North Carolina's offense of selling a schedule II controlled substance is broader than the generic trafficking offense. Selvan-Cupil contends that certain substances listed in North Carolina's schedule II—he cites only Levo-alphacetylmethadol and Remifentanil, *see* N.C. GEN. STAT. § 90-90(2)(j), (y)—are not treated as such in either the Uniform Controlled Substances Act or the federal code. In fact, both substances are

3

listed in the Controlled Substances Act's schedule II as amended periodically by the Code of Federal Regulations. The 2003 version—the year Selvan-Cupil committed his state offense—lists both Levo-alphacetylmethadol and Remifentanil in its section on "opiates." *See* 21 C.F.R. § 1308.12(c). Levo-alphacetylmethadol is also listed in the Uniform Controlled Substances Act. *See* Uniform Controlled Substances Act § 206(2)(xi) (1994). The government does not dispute this premise of Selvan-Cupil's argument, however, and instead contends that the charging documents from the 2004 case demonstrate that Selvan-Cupil's offense involved cocaine. Moreover, although Selvan-Cupil relies on an erroneous characterization of the federal schedule II, the federal law is just an example he cites for what controlled substances a trafficking offense typically covers. We will thus consider the government's argument that the charging document from the 2004 conviction establishes that it was a cocaine offense.

Although we generally look only to whether the state statute defining the crime of conviction categorically fits within the Guidelines definition of "drug trafficking offense," *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013), in a "narrow range of cases" documents from the state case may identify the defendant's prior offense with greater particularity. *Descamps v. United States*, 133 S. Ct. 2276, 2283–84 (2013). This "modified categorical approach" aids courts in "identif[ying], from among several alternatives, the crime of conviction so that the court can compare it to the generic offense." *Id.* at 2285. To do so, courts may consult sources outside the statutory definition of the prior offense including the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005).

The North Carolina statute to which Selvan-Cupil pleaded guilty in 2004 makes it unlawful for any person "[t]o manufacture, sell or deliver, or possess

with intent to manufacture, sell or deliver, a controlled substance." N.C. GEN. STAT. § 90-95(a)(1). Because there are multiple ways to commit an offense under this statute, *Shepard*-approved documents can narrow our inquiry. After Selvan-Cupil objected to the PSR, the Probation Department produced those documents relating to his 2004 conviction. A "Judgment Suspending Sentence – Felony" shows that Selvan-Cupil pleaded guilty to offense number 03CRS053161 committed on June 20, 2003, described as "SELL SCH II CS" pursuant to N.C. GEN. STAT. § 90-95(a)(1). The judgment does not identify the drug involved in that offense, but an indictment from the case does. The indictment charges Selvan-Cupil in Count III with "sale of a controlled substance 90-95(a)(1) 03crs53160." It alleges that "on or about the 20th day of June, 2003, in Lenoir County, Bertino Selvan Cupil unlawfully, willfully and feloniously did sell . . . a controlled substance[, which] consisted of cocaine, which is included in Schedule II of the North Carolina Controlled Substances Act." The indictment also includes three other counts and a second file number "03CRS53161," which is associated with Count I, "keeping and maintaining a dwelling for the use of controlled substances 90-108(a)(7)."

Selvan-Cupil contends that there is an insufficient link between the judgment and the indictment to establish that he pleaded guilty to the cocaine charge in Count III, especially because the judgment cites a different file number (03crs53161) than the one cited in Count III of the indictment (03crs53160). Review of the full record from the 2004 North Carolina case convinces us otherwise. Count III is the only count in the indictment alleging a "sale" offense, which the judgment makes clear is the offense of conviction. There is no evidence suggesting that there was any other charging document or that the indictment was amended. Although the judgment lists the file number associated not with Count III but with Count I of the indictment (the "keeping a dwelling" charge that certainly was not the count to which Selvan-

No. 13-40276

Cupil pleaded given the plain language of the judgment), that citation eliminates doubt about whether another charging instrument existed. If any ambiguity remains, the "Transcript of Plea" shows that Selvan-Cupil entered into an agreement in which he pleaded guilty to Count III in exchange for the dismissal of Counts I, II, and IV.

Because "no claim [was] made before the district court that . . . *in actuality* the conviction was based on some other, materially different charging document," the district court properly relied on the judgment and indictment under the modified categorical approach to determine that Selvan-Cupil pleaded guilty to selling cocaine. *See United States v. Torres-Diaz*, 438 F.3d 529, 535 (5th Cir. 2006) (emphasis in original) (holding that "for purposes of determining which one of the various alternative subdivisions of the statute of a prior conviction is involved, the charging document filed in the prior case unambiguously identifying the one particular subdivision charged suffices to carry that burden, absent anything in the record affirmatively casting doubt on, or creating an ambiguity respecting, that conclusion"). We therefore reject Selvan-Cupil's first argument challenging the enhancement.

**B.**

Even if the 2004 North Carolina conviction for "sale or delivery" of a controlled substance can be narrowed to one involving cocaine, Selvan-Cupil argues that it does not constitute a "drug trafficking offense" under the Guidelines for another reason: he contends that one can be convicted under the law for merely "administering" a controlled substance, which does not constitute trafficking. Understanding how Selvan-Cupil gets from the "sell or deliver" element of the statute to "administer" requires some mental gymnastics. North Carolina defines "delivery" or "deliver"—terms that do not appear in the Guidelines definition of "drug trafficking offense"—as "the actual constructive, or attempted transfer from one person to another of a controlled

6

substance, whether or not there is an agency relationship." N.C. GEN. STAT. § 90-87(7). Federal law defines "distribute" as "to deliver (other than by administering or dispensing) a controlled substance or a listed chemical," 21 U.S.C. § 802(11), and North Carolina's definition of "distribute" is substantially the same. *See* N.C. GEN. STAT. § 90-87(10). From these definitions, Selvan-Cupil argues that under federal and North Carolina law, "delivery" includes "distribution," "administering," and "dispensing," but under the Guidelines definition of "drug trafficking offense," only "distribution" and "dispensing" are included. Thus, North Carolina's statute encompasses "administering" crimes, whereas the Guidelines do not.

The parties dispute whether Selvan-Cupil preserved this error. Selvan-Cupil points to his written objections to the PSR, in which he stated that:

> The alleged North Carolina convictions are not equivalent to a felony drug trafficking offense justifying a 16-level or 12-level increase pursuant to U.S.S.G. § 2L1.2(b)(1)(A). . . . The alleged North Carolina statute[] of conviction, . . . sell/deliver a controlled substance, fall[s] outside the Guideline definition of drug trafficking offense, and therefore, the 16-level and 12-level enhancements do not apply in this case.

But in neither this written objection nor at the sentencing hearing did Selvan-Cupil argue that the "sell or deliver" statute is not a trafficking offense because it allows convictions for mere administration.

We need not decide, however, whether Selvan-Cupil's objection was specific enough to encompass the "administration" argument, because we recently rejected an almost identical argument under *de novo* review. *United States v. Teran-Salas* involved a Texas "possession with intent to deliver" statute under which the defendant argued there was a theoretical possibility that the offense could encompass mere administration. *United States v. Teran-Salas*, 767 F.3d 453, 457 (5th Cir. 2014). But that possibility was not sufficient

No. 13-40276

because the defendant did "not establish a realistic probability that Texas would prosecute his crime under an 'administering' theory in a way that does not also constitute either 'dispensing' or 'distributing' under the federal sentencing guidelines." *Id.* at 460; *see also United States v. Ruiz-Sanchez*, 574 F. App'x 424, 425 (5th Cir. 2014) (unpublished) (finding no clear error where appellant pointed to no cases in which Illinois applied its statute to an "administering" situation); *United States v. Villeda-Mejia*, 559 F. App'x 387, 389 (5th Cir. 2014) (unpublished) (same holding based on Washington law). The same is true here as Selvan-Cupil has not identified any authority showing that North Carolina has applied its statute to someone who merely administers a controlled substance. Accordingly, Selvan-Cupil has not shown error on this point, clear or otherwise.

## C.

Lastly, Selvan-Cupil argues that because he was only sentenced to "10 to 12 months" for his 2004 North Carolina conviction, he was never convicted of a felony as required by § 2L1.2(b)(1)(B). The Guidelines adopt the standard definition of a "felony" as "any federal, state, or local offense punishable by imprisonment for a term *exceeding one year*." U.S.S.G. § 2L1.2, cmt. n.2 (emphasis added).

A brief primer on North Carolina's unique sentencing regime provides context for Selvan-Cupil's argument. Sentencing in North Carolina is based on the offender's prior record level and the class of the offense. N.C. GEN. STAT. § 15A-1340.13(b). Once those are determined, the sentencing scheme provides judges with various options on the type (active, intermediate, community) and length (presumptive, aggravated, mitigated) of the sentence imposed. *See generally* Hon. W. Erwin Spainhour & Susan Katzenelson, *A Citizen's Guide to Structured Sentencing*, N.C. SENT'G & POL'Y ADVISORY COMM'N (2014), http://www.nccourts.org/Courts/CRS/Councils/spac/Documents/citizenguide20

8

14.pdf.  A grid determines the appropriate range of imprisonment: (1) the presumptive range for typical cases, (2) the aggravated range for cases in which the judge finds an aggravating factor, or (3) the mitigated range for cases in which the judge finds a mitigating factor.  *Id.* at 4.  To impose an aggravated sentence, the judge must provide the defendant with notice, and the jury must find the aggravating factors beyond a reasonable doubt or the defendant must plead to those aggravated circumstances.  *United States v. Simmons*, 649 F.3d 237, 240 (4th Cir. 2011) (en banc).  One unusual feature of North Carolina's sentencing regime is that a defendant does not receive a single, definitive term of imprisonment, such as 12 months, but instead is sentenced to a range, such as 12–14 months.  To determine the low end of that range, the judge selects the number of months from the relevant range in the grid (aggravated, mitigated, or presumptive), and the high end of the sentence is then set by a separate statutory table that corresponds to the low end selected by the judge.  *Id.*; *see also* N.C. GEN. STAT. § 15A-1340.17(d) (statutory table defining the corresponding maximum term of custody).

Selvan-Cupil's sentence was based on a prior record level of I and a Class G offense.  The judge made no findings of aggravating or mitigating factors.  That resulted in a sentencing range between 10 and 13 months for the low end of the sentence.  *See* N.C. GEN. STAT. § 15A-1340.17(c) (1995).  The judge chose the bottom of that range, 10 months.  By statute, the high end of the sentence became 12 months, so Selvan-Cupil's sentence was 10 to 12 months.[1]  *Id.* § 15A-1340.17(d).

---

[1] The sentencing grids have changed since Selvan-Cupil was sentenced in 2004.  At the time he was sentenced, North Carolina utilized its 1995 grid, available at http://www.nccourts.org/Courts/CRS/Councils/spac/Documents/felonychart_12_01_95maxchart.pdf.

No. 13-40276

Selvan-Cupil argues that because his "maximum" sentence was 12 months, he was not convicted of a "felony." This court has had to grapple with similar arguments in the past under a plain error standard. *See United States v. Castro-Magama*, 465 F. App'x 370 (5th Cir. 2012) (relying on *United States v. Colin-Fajardo*, 278 F. App'x 340 (5th Cir. 2008), and *United States v. Cedillos*, 191 F. App'x 322 (5th Cir. 2006), to find that it was not clear or obvious error for the district court to apply the 12-level enhancement for a North Carolina conviction when the mitigated range was 9 to 12 months and the defendant was sentenced to 11 months). We have not had the opportunity to review similar sentencing objections under a less deferential standard of review. *See United States v. Garcia-Duarte*, No. 14-40516 (5th Cir. Nov. 4, 2014) (granting the government's agreed motion to cancel oral argument, vacate the sentence, and remand the case for resentencing); *United States v. Zacarias-Lopez*, 583 F. App'x 354 (5th Cir. 2014) (same). The parties in this case again contest whether plain error or *de novo* review applies. Although Selvan-Cupil objected to classifying his prior conviction as a "felony," he did not raise this specific issue concerning the North Carolina sentencing scheme. We need not decide the standard of review, however, because Selvan-Cupil has not shown error, plain or otherwise, on this issue.

The difficult questions posed by some of the earlier cases analyzing the North Carolina sentencing scheme are not present here. Unlike the case in which a defendant would not be subject to a term of imprisonment exceeding one year absent a finding of aggravating factors,[2] here a sentence exceeding one year was an option within the 10 to 13 months presumptive minimum range that applied to Selvan-Cupil. That the judge chose to sentence him to

---

[2] This was the case in *Simmons*, 649 F.3d at 244–46, the leading Fourth Circuit case interpreting North Carolina's structured sentencing, upon which Selvan-Cupil relies.

10 months, thereby triggering a 12 month "maximum" and the resulting 10–12 month sentence, *see* N.C. GEN. STAT. § 15A-1340.17(d), does not change the fact that his conviction was *punishable* by a term of imprisonment exceeding a year. What matters for the felony determination is not the sentence imposed, but whether the defendant was eligible for a sentence exceeding a year. Indeed, even in the federal system, many defendants receive probationary sentences for felony offenses. Confusion may stem from North Carolina describing the high end of the 10–12 month sentence imposed as a "maximum." But that term refers to the maximum the defendant can actually serve given the sentence that was imposed under North Carolina's unusual "range" system, not the maximum term he could have received under the law. It is undisputed that the judge could have sentenced Selvan-Cupil to a 13 month "minimum," which would have triggered a 16 month "maximum" under the statute. *See id.* That option to impose a sentence exceeding one year ends the inquiry. Selvan-Cupil's 2004 conviction was a felony.

## III.

For these reasons, we conclude that the district court did not err in applying the 12-level "drug trafficking offense" enhancement to Selvan-Cupil's sentence. The judgment of the district court is AFFIRMED.