# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50629

United States Court of Appeals
Fifth Circuit

**FILED**
June 13, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

  Plaintiff - Appellee

v.

SERGIO JIMENEZ-IBARRA, also known as Sergio Ibarra-Jimenez, also known as Sergio Jimenez, also known as Sergio Ibarra,

  Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:16-CR-16-1

Before REAVLEY, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

  Defendant Sergio Jimenez-Ibarra appeals his 27-month below-Guidelines sentence imposed following his guilty-plea conviction for illegal reentry into the United States following deportation in violation of 8 U.S.C. § 1326. He contends, for the first time on appeal, that the district court erred by enhancing his sentence 12 levels pursuant to Section 2L1.2(b)(1)(B) of the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-50629

Guidelines because his 2006 Texas conviction does not constitute a "drug trafficking offense." It is possible that Jimenez-Ibarra's claimed error regarding his sentencing enhancement is unreviewable. Nevertheless, we conclude that the district court did not plainly err. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Sergio Jimenez-Ibarra, a citizen of Mexico, pled guilty in 2006 in Texas state court to a violation of Section 481.112(b) of the Texas Health and Safety Code.[1] That was a felony conviction even though Jimenez-Ibarra received only a 60-day sentence. In July 2006, he was deported and notified that he could not return to the United States without permission. In October 2013, federal agents found him in Texas. He had been arrested by state authorities for aggravated assault with a deadly weapon on his wife. Jimenez-Ibarra remained in state custody for the next two years. A jury found him guilty of the assault charge, and he was sentenced to three years in prison. He was paroled in December 2015 and transferred to federal custody.

In March 2016, Jimenez-Ibarra pled guilty before a federal magistrate judge to illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b). At sentencing, his base offense level of 8 was increased by 12 levels pursuant to Guideline Section 2L1.2(b)(1)(B). The district court adopted the recommendation in the Presentence Investigation Report ("PSR") that Jimenez-Ibarra's previous Texas felony drug offense for "possession with intent

---

[1] Section 481.112(b) is the penalty provision of the statute, which states: "An offense under [Section 481.112(a)] is a state jail felony if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, less than one gram." TEX. HEALTH & SAFETY CODE § 481.112(b). This subsection is linked to subsection 481.112(a), which sets forth the actual offense: "[A] person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1." *Id.* § 481.112(a).

No. 16-50629

to deliver a controlled substance P[enalty Group] I, less than 1 gram" was a "drug trafficking offense."   After a three-level acceptance-of-responsibility reduction, Jimenez-Ibarra's total offense level was 17, with an advisory Guidelines range of 30 to 37 months.  Jimenez-Ibarra did not object to the PSR but requested a downward variance that the Government opposed. The district court sentenced Jimenez-Ibarra to 27 months in prison, followed by three years of supervised release.  Jimenez-Ibarra timely appealed.

## DISCUSSION

Jimenez-Ibarra's primary contention is that his prior Texas felony conviction does not constitute a drug-trafficking offense for purposes of applying the 12-level enhancement of Section 2L1.1(b)(1)(B).  He contends that the Texas statute is overbroad because it criminalizes certain substances, namely position isomers of cocaine, that are not covered by the Controlled Substances Act ("CSA").   He further asserts that the district court erred in relying on the PSR's characterization of his offense.  Instead, the court "could not exclude the possibility that his" state conviction "rested on a substance that is not covered by the CSA: a position isomer of cocaine."  Jimenez-Ibarra also argues the Government failed to establish that the controlled substance underlying his state-court conviction is covered by the CSA.

Before we consider the merits of Jimenez-Ibarra's challenge to his sentence, we examine our standard of review.  Generally, we review a district court's application or interpretation of the Guidelines *de novo.  United States v. Reyna-Esparza*, 777 F.3d 291, 293–94 (5th Cir. 2015).   That standard governs our review of preserved errors. *United States v. Neal*, 578 F.3d 270, 273 (5th Cir. 2009).  Our analysis of unpreserved errors is determined by whether the defendant waived or forfeited his argument below.

3

No. 16-50629

"Waiver and forfeiture are two different means by which a defendant may react to an error made by the government or the district court in the proceedings in his case." *United States v. Dodson*, 288 F.3d 153, 160 (5th Cir. 2002). "Forfeiture is the failure to make the timely assertion of a right[.]" *United States v. Arviso-Mata*, 442 F.3d 382, 384 (5th Cir. 2006). We review forfeited errors under the plain-error standard. *Id.* "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). "It occurs by an affirmative choice by the defendant to forego any remedy available to him, presumably for real or perceived benefits resulting from the waiver." *Dodson*, 288 F.3d at 160. An error that is waived is unreviewable. *United States v. Rodriguez*, 602 F.3d 346, 350 (5th Cir. 2010). "Review of invited errors is almost similarly precluded," with those errors being "reviewed only for manifest injustice." *Id.* at 350–51.

We examine how Jimenez-Ibarra's counsel dealt with the issue at sentencing. During the sentencing hearing, counsel stated that the PSR was accurate in concluding that a 12-level enhancement could be applied due to Jimenez-Ibarra's prior offense. Counsel, though, requested a downward variance to an 18-to-24 month Guidelines range based on the fact that the underlying offense "was charged as a possession with intent to deliver for less than one gram," was Jimenez-Ibarra's first drug offense, and "there was no plea bargain to anything less." Obviously, then, no objection was made to the applicability of the enhancement, just its suitability.

Both parties assume our analysis is governed under the familiar plain-error standard for forfeited errors. We apply that more demanding standard because we affirm even under plain-error review.

To establish plain error, Jimenez-Ibarra must show an error that was clear or obvious and that affected his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). Even if he makes such a showing, we have

4

the discretion to correct the error but only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Olano*, 507 U.S. at 736). We pretermit deciding whether the district court erred because, as explained below, Jimenez-Ibarra cannot establish that any error was plain.

"'Plain' error is error so clear or obvious that 'the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.'" *United States v. Delgado*, 672 F.3d 320, 330 (5th Cir. 2012) (en banc) (quoting *United States v. Hope*, 545 F.3d 293, 296 (5th Cir. 2008)). Determining whether an error is "clear or obvious" requires us to "look to the state of the law at the time of appeal," and "decide whether controlling circuit or Supreme Court precedent has reached the issue in question, or whether the legal question would be subject to reasonable dispute." *United States v. Fields*, 777 F.3d 799, 802 (5th Cir. 2015).

The Texas statute underlying Jimenez-Ibarra's 2006 conviction prohibits the knowing manufacture, delivery, or possession with intent to deliver "a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE § 481.112(a). Penalty Group 1 includes "Cocaine, including: (i) its salts, its optical, *position*, and geometric isomers, and the salts of those isomers . . . ." *Id.* § 481.102(3)(D) (emphasis added). On the other hand, the CSA covers "cocaine, its salts, optical and geometric isomers, and salts of isomers," but does not expressly list position isomers of cocaine. *See* 21 U.S.C. § 812 sched. II(a)(4); *see also* 21 U.S.C. § 802(14) ("As used in schedule II(a)(4), the term 'isomer' means any optical or geometric isomer."). According to Jimenez-Ibarra, because the Texas statute covers position isomers of cocaine and the CSA does not, the Texas statute is overbroad and his prior conviction is not categorically a "drug trafficking offense" under federal law.

The Government sets forth three arguments that it suggests preclude a finding of clear or obvious error. First, it argues that had Jimenez-Ibarra not

remained silent on the issue, it would have been able to provide expert testimony that the CSA's broad definition of cocaine includes position isomers. On this point, the Government relies on the general rule that "questions of fact capable of resolution by the district court can never constitute plain error." *United States v. Chung*, 261 F.3d 536, 539 (5th Cir. 2001). Jimenez-Ibarra responds by arguing that whether the CSA includes position isomers of cocaine is a legal question determined by the statute's plain language.

The Government next argues that Jimenez-Ibarra has not established a realistic probability that an individual could be prosecuted under the Texas statute for possession with intent to deliver a position isomer of cocaine, which it characterizes as a theoretical molecule. On various occasions we have applied a "common-sense approach" and determined that a technically overbroad statute qualifies as a predicate offense for a Guidelines enhancement if there is no "realistic probability" that the state would actually apply its statute to conduct outside the scope of the federal definition of the crime. *See United States v. Teran-Salas*, 767 F.3d 453, 460 (5th Cir. 2014); *see also United States v. Carrasco-Tercero*, 745 F.3d 192, 197–98 (5th Cir. 2014). To counter this point, Jimenez-Ibarra once again asserts that the plain language of the statute controls and establishes that there is indeed a realistic probability of prosecution for a Section 481.112 offense based on position isomers of cocaine.

The final argument raised by the Government focuses on the fact that we have yet to determine whether the Texas controlled-substances schedules are broader than those listed in the CSA. This argument seeks to undercut Jimenez-Ibarra's assertion that the Texas statute at issue is similar to certain California statutes, which this court and the Ninth Circuit have held do not categorically qualify as drug-trafficking offenses. For example, we adopted the reasoning of the Ninth Circuit and held that for a violation of California Health

and Safety Code Section 11351 to qualify as a "drug trafficking offense," it required the application of the modified-categorical approach because the California statute was divisible. *United States v. Gomez-Alvarez*, 781 F.3d 787, 792–94 (5th Cir. 2015).

Each of the Government's arguments and their respective counterpoints lead us to the same conclusion: Any error that occurred was not clear or obvious. To begin with, the state of the law is not clear on whether the Texas controlled-substances schedules are broader than those listed in the CSA. *See Fields*, 777 F.3d at 802. "We ordinarily do not find plain error when we have not previously addressed an issue." *United States v. Evans*, 587 F.3d 667, 671 (5th Cir. 2009). That is because "if the law is unsettled within the circuit, any error cannot be plain." *Fields*, 777 F.3d at 805. Moreover, based on our prior decision in *Teran-Salas*, it is at least subject to reasonable dispute whether there is a "realistic probability" that Texas would apply its statute to individuals charged with possession with intent to deliver position isomers of cocaine. *See Teran-Salas*, 767 F.3d at 458. Errors subject to reasonable dispute are never plain. *See United States v. Ellis*, 564 F.3d 370, 377–78 (5th Cir. 2009).

AFFIRMED.