# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-51060

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

MICHAEL RAYMOND FIELDS, also known as Daniel Thomas Tierrey, also known as Dani Tierney, also known as Dani Tierrey,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

February 9, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SMITH, and GRAVES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In this case, we must decide whether the district court's imposition of a condition of supervised release prohibiting the defendant from "residing or going to places where a minor or minors are known to frequent without prior approval of the probation officer" was plainly erroneous. We conclude it was not and AFFIRM.

No. 13-51060

I.

In January 1990, Michael Fields was convicted in Wisconsin state court of second degree sexual assault of a child.[1] He was sentenced to five years in prison, but only served one year; the rest of his term was probated. Fields was required to register as a sex offender in Wisconsin for the rest of his life. Because of this conviction, he must also register as a sex offender in Texas. Fields has thrice been arrested and convicted for failing to register as a sex offender.[2] He has also been repeatedly told by state authorities in both Wisconsin and Texas that he must register as a sex offender, instructions with which it appears he has never complied.[3]

Fields was arrested by the Austin Police Department for failing to register as a sex offender in April 2013. The next month, he was indicted in federal court and charged with one count of failing to register as a sex offender

---

[1] According to the pre-sentence report: "on or about September 2, 1989, Fields had sexual contact with S.H., a twelve year old child by sliding his hand under the victim's clothing and fondling her breasts. The records also reflect that Fields fondled the victim's vagina, over her clothing. When confronted by law enforcement, the defendant stated that he had 'a lot to drink' that evening and did not remember touching the victim but the victim was a 'good kid' and was 'probably telling the truth.'"

[2] In September 2000, Fields was arrested in Colorado Springs, Colorado, for failing to register as a sex offender. He pled guilty the next year, and was sentenced to 270 days in jail. In 2009, Fields was arrested in Austin, Texas, and charged with failing to register as a sex offender. He pled guilty, and was extradited to Wisconsin based on a probation/parole violation warrant. Finally, April 2013, Fields was again arrested by the Austin Police Department for failing to register as a sex offender, which formed the basis of the federal conviction now at issue.

[3] In the period between when Fields was released from jail in Wisconsin in June 2010, and when he was arrested in Texas in April 2013, Fields was repeatedly warned about the need to register as a sex offender. In May 2010, before he was released from Wisconsin jail, Fields was told of the need to register as a sex offender. In July 2011, after Fields had moved to Texas, employees of the sheriff's office gave him a Texas State Offender Registration Program Pre-Release Notification Form, which stated that he was required to register as a sex offender. He signed and acknowledged this form, but did not register. Finally, in May 2012, Fields was arrested by the Austin Police Department for camping in public. He was again given a sex offender notification form, which he did not complete.

No. 13-51060

in violation of the Sex Offender Registration and Notification Act ("SORNA").[4] After unsuccessfully moving to dismiss the indictment on the grounds that SORNA was unconstitutional, Fields pled guilty in July 2013.

In November 2013, Fields appeared before the district court for his sentencing hearing. At that hearing, the court reviewed Fields's criminal history record, and concluded that, even discounting several convictions where it was disputed as to whether Fields committed the crime, he had "a solid criminal record since 1974." After hearing from counsel, the court then sentenced Fields to a 27-month sentence of imprisonment, followed by ten years of supervised release. The supervision included a number of conditions, including, as relevant here, a requirement that:

> The defendant shall follow all other lifestyle restrictions or treatment requirements imposed by the therapist, and continue those restrictions as they pertain to avoiding risk situations throughout the course of supervision. *This includes not residing or going to places where a minor or minors are known to frequent without prior approval of the probation officer.*

Fields did not object to this condition. This timely appeal follows.

## II.

We normally review conditions of supervised release for abuse of discretion.[5] In this case, because Fields did not object to his supervised release condition while before the district court, we review for plain error.[6] As the Supreme Court has made clear, plain error is a demanding standard:

> First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means

---

[4] 42 U.S.C. § 16901 *et seq.*

[5] *United States* v. *Rodriguez*, 558 F.3d 408, 412 (5th Cir. 2009).

[6] *United States* v. *Weatherton*, 567 F.3d 149, 152 (5th Cir. 2009).

No. 13-51060

he must demonstrate that it affected the outcome of the district court proceedings. Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Meeting all four prongs is difficult, as it should be.[7]

In considering whether an error is "clear or obvious" we look to the "state of the law at the time of appeal,"[8] and we must decide whether controlling circuit or Supreme Court precedent has reached the issue in question, or whether the legal question would be subject to "reasonable dispute."[9]

a.

In imposing special conditions of supervised release, the district court has "extensive," but not unbridled, discretion.[10] That discretion is bound in two ways. First, the condition must be "reasonably related" to one of four statutory factors:

> (1) the nature and characteristics of the offense and the history and characteristics of the defendant, (2) the deterrence of criminal conduct, (3) the protection of the public from further crimes of the defendant, and (4) the provision of needed educational or vocational training, medical care, or other correctional treatment to the defendant.[11]

---

[7] *Puckett* v. *United States*, 556 U.S. 129, 135 (2009) (internal quotation marks, brackets, and citations omitted).

[8] *United States* v. *Segura*, 747 F.3d 323, 330 (5th Cir. 2014).

[9] *Id.* (citing *United States* v. *Rodriguez-Parra*, 581 F.3d 227, 231 (5th Cir. 2009)).

[10] *United States* v. *Ellis*, 720 F.3d 220, 225 (5th Cir. 2013).

[11] *Weatherton*, 567 F.3d at 153 (citing 18 U.S.C. §§ 3583(d)(1), 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D)); *see also id.* at 153 n.1 (special condition need only be reasonably related to one of the four statutory factors, not all four).

4

No. 13-51060

Second, "the condition cannot impose any greater deprivation of liberty than is reasonably necessary" to accomplish the purposes set out in 18 U.S.C. § 3553(a).[12]  Fields challenges his special condition on both grounds.

Set against these permissive standards, it is not obvious to us that the district court's decision to impose a condition restricting Fields's ability to "resid[e] or go[] to places where a minor or minors are known to frequent without prior approval of the probation officer" was error.  And even if there were error, we could not hold that the error was plain.

1.

The first statutory condition is "the nature and characteristics of the offense and the history and characteristics of the defendant."[13]  Two points of history are relevant: Fields's underlying sexual assault conviction in 1990 and his repeated convictions for failing to register as a sex offender.

Turning first to the original sexual assault conviction, we have held that "[b]ecause district courts must consider the defendant's history and characteristics, they may take into account 'a defendant's prior conviction for a sex offense when imposing sex-offender-related special conditions when the underlying conviction is for a non-sexual offense.'"[14]  Our court, along with our sister circuits, has under such circumstances repeatedly affirmed special conditions that require sex offender treatment or, as here, limit where the defendant may go.  We have done so even when, as here, the underlying sexual

---

[12] *Id.* (citing 18 U.S.C. § 3583(d)(2)) (internal quotation mark omitted).  Section 3553(a) sets out the general factors to be considered when a court imposes a sentence. 18 U.S.C. § 3553(a).  The special conditions must also be "consistent with any pertinent policy statements issued by the Sentencing Commission."  18 U.S.C. § 3583(d)(3).  None of the Sentencing Commission's policy statements on conditions of supervised release directly implicate this case.  *See* U.S.S.G. § 5D1.3(c)-(e).

[13] 18 U.S.C. § 3553(a)(1).

[14] *Weatherton*, 567 F.3d at 153 (quoting *United States* v. *Deleon*, 280 F. App'x 348, 351 (5th Cir. 2008) (unpublished)).

offense occurred many years before, and the conviction leading to the imposition of the special condition was non-sexual in nature.[15] In doing so, we do not require a perfect fit between past offense and current condition. Even so, the government must demonstrate *some* connection between criminal history and special condition. For example, in *United States* v. *Salazar*,[16] the district court imposed a special condition prohibiting the defendant from "purchasing, possessing, or using any sexually stimulating or sexually orienting materials," after he was convicted of failing to register as a sex offender.[17] We held that this special condition was not reasonably related to the circumstances of the offense or the history and characteristics of the defendant because there was no evidence of "predatory sexual behavior beyond his singular and now-remote sexual offense" or that "sexually stimulating materials fueled his past crimes."[18]

Fields's criminal history, as with that of the defendant in *Salazar*, involves a single, remote sexual offense. His prior conviction for sexual assault of a child, however, does bear some relationship to the special condition limiting access to places frequented by children – unlike *Salazar*, where there was no evidence that pornography had anything to do with the underlying sex

---

[15] *See, e.g.*, *United States* v. *Cuneo*, 554 F. App'x 313, 318 (5th Cir. 2014) (unpublished) (affirming the special condition requirement of sex offender treatment despite the fact that the defendant's "last sexual assault conviction was twenty-three years ago"); *United States* v. *Byrd*, 551 F. App'x 726, 727 (5th Cir. 2013) (unpublished) (concluding, under plain error review, that a condition "restricting travel to places frequented by children" was reasonably related to the relevant statutory factors when defendant was convicted of failing to register as a sex offender); *United States* v. *Dupes*, 513 F.3d 338, 344 (2d Cir. 2008) ("district court had authority to require a defendant, following his conviction for bank larceny, to undergo sex offender treatment and to stay away from places where children typically congregate, based on the defendant's prior conviction for sexually abusing a child.") (citing *United States* v. *Peterson*, 248 F.3d 79, 84-86 (2d Cir. 2001)).

[16] 743 F.3d 445 (5th Cir. 2014).

[17] *Id.* at 447-48.

[18] *Id.* at 452.

crime, here, access to children was a necessary predicate to Fields's original sexual assault offense.

Moreover, in evaluating the defendant's history, we have held that the defendant's "refusal to register, despite multiple warnings from [state] officials, culminating in his guilty plea to the crime [of refusal to register], evidences a refusal to abide by the restrictions placed on sex offenders thereby undermining efforts to combat sex-offender recidivism."[19]   Pursuant to this holding, were we unable to sustain Fields's condition under the first statutory consideration, we could do so under the second or third provision.  Specifically, Fields's restrictions can be justified either because his history of noncompliance with punitive restrictions requires a harsher response, the second statutory consideration, or because the defendant, who has shown an unwillingness to comply with a provision designed to protect the general populace, poses a greater risk to the public, the third statutory consideration.[20] Putting these two factors together – a history of sexual assault of children along with a failure to respond to the "first order" remedy of registration – the district court could reasonably have concluded that stronger remedial measures were necessary.

Even were we to find otherwise, and hold that the district court was in error, we cannot conclude such error would be "clear or obvious."[21]   Courts within our circuit have affirmed similar (or identical) conditions in similar

---

[19] *See Cuneo*, 554 F. App'x at 318; *see also United States* v. *Morales-Cruz*, 712 F.3d 71, 75 (1st Cir. 2013) ("Given Morales-Cruz's manifest lack of respect for the SORNA registration requirements, and the reasonable inference that his refusal to comply with these requirements poses a risk of recidivism, the district court's imposition of sex-offender treatment was reasonably related to Morales-Cruz's present offense as well as to his criminal history . . . .").

[20] *See Cuneo*, 554 F. App'x at 318 ("Cuneo's extensive criminal history (including two convictions for violence against his ex-wife) and his repeated refusal to register permit a rational inference that Cuneo presents a recidivism risk . . . .").

[21] *United States* v. *Nava*, 762 F.3d 451, 452 (5th Cir. 2014).

contexts.[22] Nor has Fields been able to identify an on-point circuit case clearly demonstrating that the district court's condition was not reasonably related to the statutory factors – and we have held that if the law is unsettled within the circuit, any error cannot be plain.[23]

2.

The second issue is whether the condition is a greater deprivation of Fields's liberty than reasonably necessary to accomplish the goals of the statutory scheme. We begin our analysis with *United States* v. *Windless*.[24] There, our court faced a similar question. The defendant had been convicted nearly two decades before the appeal of sexually assaulting a child and was required to register as a sexual offender.[25] He had been repeatedly charged with failing to register as a predatory offender, though he was never found guilty of any additional sexual assaults, and was convicted in federal court of failing to register as a sex offender.[26] The district court imposed a special condition requiring that "[t]he defendant shall have no direct or indirect contact with any children under the age of 18, unless accompanied and supervised by an adult, who has been approved in advance by the probation officer."[27]

---

[22] *See, e.g.*, *United States* v. *Byrd*, 551 F. App'x 726, 727 (5th Cir. 2013) (unpublished) (concluding that a restriction, imposed after a conviction for failure to register as a sex offender, on "travel to places frequented by children" was "reasonably related to relevant factors," as determined on plain error review); *United States* v. *Kroft*, 535 F. App'x 422, 422-23 (5th Cir. 2013) (unpublished) (same); *see also United States* v. *Bishop*, 603 F.3d 279, 281 (5th Cir. 2010) (finding as relevant to plain error review the fact that "in a series of recent unpublished opinions, this circuit has consistently held that such [purported errors] do not rise to the level of plain error.").

[23] *See United States* v. *Vega*, 332 F.3d 849, 852 n.3 (5th Cir. 2003) ("We conclude that any error by the district court in this regard was not plain or obvious, as we have not previously addressed this issue.").

[24] 719 F.3d 415 (5th Cir. 2013).

[25] *Id.* at 418.

[26] *Id.*

[27] *Id.* at 419.

No. 13-51060

Reviewing for abuse of discretion, we reversed. We concluded that "to forbid all 'indirect' contact [with children] works a serious restriction on liberty, making a trip to the grocery store or a place of worship a trip that may end in imprisonment via revocation sentence."[28] While a defendant's conduct might warrant such a condition under certain circumstances, we held that:

> A restriction of this breadth works a "greater deprivation of liberty than is reasonably necessary" where, as here, a defendant is being sentenced for failing to register as a sex offender; the offense that required him to register is not of recent origin; and since that offense, he has committed no other crimes against minors, and the evidence suggests that he has failed to register only twice before.[29]

In short, a condition that would severely limit where a defendant could go in public, based mainly on a history of violating registration requirements, was unwarranted.[30]

The appropriateness of the supervised release condition is a function of the severity of the offense history and the impact of the restriction. Fields and Windless have similar criminal histories, and of the four criteria highlighted by the *Windless* court, the first three are identical. Both were sentenced for failing to register as a sex offender, the event that precipitated the registration requirement is not recent, and there is no evidence of any subsequent crimes against children.[31] The fourth factor, previous failures to register, cuts

---

[28] *Id.* at 422.

[29] *Id.* (quoting *United States* v. *Weatherton*, 567 F.3d 149, 153 (5th Cir. 2009)). In dicta, we also "note[d] that here, the defendant committed the underlying sex offense when he was only fifteen years old, and that this condition would prevent him from *ever* seeing his minor children without the supervision of someone approved by a probation officer." *Id.*

[30] In our earlier decision in *United States* v. *Paul*, 274 F.3d 155 (5th Cir. 2001), we addressed a similar condition prohibiting "indirect contact with minors" in the context of a vagueness and overbreadth challenge. We read the condition narrowly to exclude chance or incidental contact with children. *Id.* at 166. Despite addressing different types of challenges, both *Paul* and *Windless* share a similar concern with a condition of supervised release dramatically limiting a defendant's ability to travel.

[31] *See Windless*, 719 F.3d at 422.

differently. The *Windless* court concluded that Windless had "failed to register only twice before."[32] While Fields was only *convicted* two other times of failing to register, the PSR reports at least two other instances where he was told by Texas or Wisconsin state authorities that he needed to register and where he failed to do so, a conclusion he does not challenge. Even still, the criminal histories are close enough that if Fields's condition has a similar impact to that which the court perceived in *Windless*, under our precedent it ought fall.

We conclude that Fields's restriction is not comparably severe. The condition at issue prohibits Fields from "going to places where a minor or minors are *known to frequent* without prior approval of the probation officer." The word "frequent" serves as an important modifier – it limits the zone of forbidden locations to those that children "visit often" or "associate with, be in, or resort to often or habitually."[33] By our read, this would include places like schools and playgrounds, but would not include locations such as grocery stores, places of worship, transportation hubs, and most stores. Children, to be sure, can and do attend such places – but they do not "frequent" them. In this respect, the restraint on Fields's liberty, while by no means trivial, is not as extensive as the restraint in *Windless*.

Furthermore, Fields has the benefit of ex ante knowledge about which places are safe for him to go, as "places where minors are known to frequent" is an objective standard that can be determined in advance, especially through consultation with his probation officer.    Finally, we note that Fields can seek permission from his probation officer to go to places that children frequent. "If such permission is unfairly denied, the district court can modify this term."[34] We have recognized before, and reaffirm now, that a modifiable condition such

---

[32] *Id.*

[33] Webster's New Int'l Dictionary 909 (3d ed. 1981).

[34] *United States* v. *Christian*, 344 F. App'x 53, 56 (5th Cir. 2009) (unpublished).

No. 13-51060

as this one works a less significant deprivation of liberty than one which cannot be altered.[35]

In any event, even were we to find that the condition was error, that error was not clear or obvious. The defendant cannot point to any case law concluding that the imposition of the type of restriction at issue here was error. Our court has, however, thrice ruled in unpublished decisions that the condition at issue here was not plainly erroneous.[36] While a decision ruling that an error is not plain does not necessarily mean that it was not clear or obvious, given the additional criteria which must be found before a court may find plain error, we have looked to rulings rejecting plain error in analogous situations to decide whether plain error exists in the instant case.[37] We do so here, and reach the same conclusion.

b.

We need go no further. Without demonstrating error, much less clear or obvious error, Fields cannot satisfy the criteria necessary for our court to grant relief.[38]

III.

Fields also argues that SORNA's registration requirement is an unconstitutional extension of Congress's Commerce Clause power as interpreted by *National Federation of Independent Business* v. *Sebelius*.[39] Fields acknowledges that this argument is foreclosed and it is.

---

[35] *See id.*

[36] *See United* States v. *Byrd*, 551 F. App'x 726, 727 (5th Cir. 2013) (unpublished); *United States* v. *Nelson*, 544 F. App'x 503, 504 (5th Cir. 2013) (unpublished); *United States* v. *Kroft*, 535 F. App'x 422, 422-23 (5th Cir. 2013) (unpublished).

[37] *See United States* v. *Bishop*, 603 F.3d 279, 281 (5th Cir. 2010).

[38] We do not reach the issue of whether Fields's substantial rights were affected. *Puckett* v. *United States*, 556 U.S. 129, 135 (2009).

[39] 132 S. Ct. 2566 (2012).

No. 13-51060

In *United States* v. *Whaley*, our court held that SORNA was constitutional under the Commerce Clause.[40] While *Whaley* predates *National Federation*, as we held in *United States* v. *Stager*, which addressed the same legal question, this is of no moment:

> Under our rule of orderliness, one panel may not overrule the decision of a prior panel absent an intervening change in the law, such as by a superseding Supreme Court case. "Such an intervening change in the law must be unequivocal, not a mere hint of how the Court might rule in the future." Because [*National Federation*] did not explicitly or implicitly overrule *Whaley*, we are bound by that decision.[41]

### IV.

We AFFIRM the judgment of the district court.

---

[40] 577 F.3d 254, 258-61 (2009).

[41] 552 F. App'x 377, 378 (5th Cir. 2014) (unpublished) (quoting *United States* v. *Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013) (internal citation omitted)).