# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50653

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RUBEN PRIETO,

Defendant – Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

September 16, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas

Before KING, SMITH, and ELROD, Circuit Judges.*

PER CURIAM:

Ruben Prieto appeals his sentence following his conviction for failing to register or update his registration as a sex offender. Because Prieto cannot meet the plain-error standard, we affirm.

## I.

Prieto pleaded guilty, without a plea agreement, to failing to register or update a registration as a sex offender in violation of the Sex Offender Registration and Notification Act (SORNA). The presentence investigation report (PSR) calculated a Guidelines range of 15 to 21 months. In his written

---

* Carolyn Dineen King, Circuit Judge, concurs in the judgment only.

No. 14-50653

objections to the PSR, Prieto argued that he was entitled to a three-level reduction under U.S.S.G. § 2A3.5(b)(2), for voluntarily correcting the failure to register.  At sentencing, the district court overruled Prieto's objection and adopted the PSR.

The district court sentenced Prieto within the calculated Guidelines range to 15 months of imprisonment and a life term of supervised release. Among the special conditions of supervised release that it imposed, the district court ordered that Prieto "refrain from purchasing, possessing, or using any sexually stimulating or sexually oriented materials, including, but not limited to, written, audio, and visual depictions, such as pornographic books, magazines, photographs, films, videos, DVD's, computer programs, or any other media for the portrayal of the same."  In this opinion, we refer to that condition as the "pornography restriction."  The district court also ordered that Prieto "not resid[e] or go[] to places where a minor or minors are known to frequent without prior approval of the probation officer."  We refer to that condition as the "geographic restriction."  Both of these special conditions had been recommended by the PSR.

At the sentencing hearing, Prieto did not object to the special conditions. He timely filed a notice of appeal.

## II.

On appeal, Prieto argues that the district court plainly erred by imposing the two special conditions described above.[1]  Prieto concedes that because he failed to object to the special conditions in the district court, review is for plain error.  To demonstrate plain error, Prieto must make four showings:

---

[1] Prieto also argued in his initial brief that the district court erred in its calculation of the Guidelines range by failing to apply the three-level reduction for voluntarily correcting the failure to register under U.S.S.G. § 2A3.5(b)(2).  However, several months before oral argument, Prieto advised us that he has been released from confinement.  Therefore, as Prieto concedes, his challenge to the district court's Guidelines calculation is now moot.

No. 14-50653

First, there must be an error or defect—some sort of "[d]eviation from a legal rule"—that has not been intentionally relinquished or abandoned, *i.e.,* affirmatively waived, by the appellant.  Second, the legal error must be clear or obvious, rather than subject to reasonable dispute.  Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the district court proceedings."  Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*Puckett v. United States*, 556 U.S. 129, 135 (2009) (alterations in original) (citations omitted) (quoting *United States v. Olano*, 507 U.S. 725, 732–33, 734, 736 (1993)).

We discuss Prieto's challenge to each special condition in turn.

## III.

Prieto perceives both statutory and constitutional problems in the district court's imposition of the pornography restriction.  First, he argues that the district court did not explain its reasons for imposing the condition, and the reasons cannot be inferred from the record.  *See* 18 U.S.C. § 3553(c); *United States v. Salazar*, 743 F.3d 445, 451 (5th Cir. 2014) (noting that § 3553(c) requires a district court "to state 'the reasons for its imposition of the particular sentence'" and holding that district courts must justify special conditions with factual findings, and vacatur is required if the reasons for the condition cannot be inferred from the record).  Second, Prieto argues that the pornography restriction is not reasonably related to any of the factors that district courts must consider when imposing conditions of supervised release, and that the pornography restriction imposes a greater deprivation of liberty than is reasonably necessary for the purposes of deterrence, protection of the public,

3

## No. 14-50653

and rehabilitation. *See* 18 U.S.C. § 3583(d)(1) (requiring that special conditions be "reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)")[2]; *see also id.* § 3583(d)(2) (requiring that special conditions of supervised release "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)").[3]     Finally, he argues that the pornography restriction violates the First Amendment.

### A.

In support of his argument that the district court did not explain the pornography restriction and that it is not reasonably related to the statutory supervised-release factors, Prieto primarily relies upon *Salazar*, which issued nearly four months before Prieto's sentencing hearing.    In *Salazar*, the defendant was convicted of failure to register as a sex offender under SORNA. 743 F.3d at 447.    The district court sentenced Salazar to time served plus fifteen years of supervised release.    *Id.*    When Salazar violated conditions of that release by committing a crime of family assault, failing to notify his probation officer of his arrest, and failing to meet with a sex-offender counselor, the district court revoked that supervised-release term and sentenced Salazar to twelve months of imprisonment, to be followed by a new fourteen-year term of supervised release.    *Id.* at 447–48.    As a special condition of supervised release, the district court required Salazar to "refrain from purchasing,

---

[2] In other words, special conditions must reasonably relate to "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."   § 3553(a)(1), (a)(2)(B)–(D).

[3] These purposes are: adequate deterrence, protection of the public, and—as relevant here—providing correctional treatment in the most effective manner.   *See* § 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D).

possessing, or using any sexually stimulating or sexually oriented materials including but not limited to written, audio and visual depictions, such as, pornographic books, magazines, photographs, films, videos, DVDs, computer programs, or any other media for portrayal of the same." *Id.* at 448.

Because Salazar had preserved his objection to the special condition, we reviewed for abuse of discretion. *Id.* at 450. We began by noting that previous decisions upholding similar pornography restrictions did not control because they had been decided on plain-error review. *Id.* We then concluded that the district court abused its discretion by failing to explain how the pornography restriction was reasonably related to the statutory factors, and furthermore, that the district court abused its discretion in concluding that the restriction was thus related. *Id.* at 451.

The pornography restriction was not reasonably related to Salazar's history and characteristics or the nature and circumstances of the offense, we reasoned, because:

> Nothing in Salazar's history suggests that sexually stimulating materials fueled his past crimes. Further, the district court below did not explain why this restriction is necessary for Salazar. There does not appear to be any evidence that Salazar is a repeat offender of sex crimes or that access to pornographic materials contributed to his original offense. In fact, there has been no evidence presented that Salazar ever used pornography. . . . [T]here is little indication that Salazar has an abnormal potential for recidivism or any proclivity for sexual behavior. There is no evidence of predatory sexual behavior beyond his singular and now-remote sexual offense. To be sure, Salazar failed to register as a sex offender and failed to meet with his sex offender counselor as ordered. But these violations alone, though significant, do not on their face appear to justify the imposition of this restriction. Additionally, the arrest that prompted this revocation does not appear to be sex related. There is "no suggestion in the PSR or at sentencing that appellant had abused or even possessed

5

pornography in the past, much less that it contributed to his offense or would be likely to do so in the future."

*Id.* at 452 (internal quotation marks omitted) (quoting *United States v. Perazza–Mercado*, 553 F.3d 65, 76 (5th Cir. 2009)).

The pornography restriction was not reasonably related to protecting the public and adequately deterring the defendant from future criminal conduct, we held, because:

> [T]here is little indication that Salazar has a high potential for committing future sexual crimes. It is hard to imagine how preventing Salazar from accessing sexually stimulating materials would prevent future criminal conduct when there is no indication in the record that Salazar has an unhealthy relationship with such materials or that such materials contributed to his underlying crimes or other violations.

*Id.*

Finally, the pornography restriction did not reasonably relate to Salazar's effective correctional treatment because "there was no evidence presented that sexually stimulating materials contributed to Salazar's crimes or that sexually stimulating materials otherwise negatively impact Salazar's life in a way that would benefit from 'correctional treatment.'" *Id.* at 453. Because the district court abused its discretion in failing to provide reasons for imposing the pornography restriction, and because the record did not disclose any reasonable relationship between the restriction and the statutory factors, we vacated the pornography restriction and remanded the case for the district court to reconsider the appropriateness of the pornography restriction. *Id.* We did not reach the alternative questions of whether the pornography restriction was a greater deprivation of liberty than reasonably necessary or whether it violated the First Amendment. *Id.* at 451.

Prieto's case is very similar to *Salazar*.  As in *Salazar*, the district court did not provide any explanation for imposing the pornography ban on Prieto, and the reasons are not apparent from the record.  "Nothing in [Prieto's] history suggests that sexually stimulating materials fueled his past crimes." *Salazar*, 743 F.3d at 452.  And the record contains no evidence that Prieto "is a repeat offender of sex crimes or that access to pornographic materials contributed to his original offense." *Id.*  As in *Salazar*, there is no record evidence that Prieto has ever even used pornography. *Id.*  Moreover, nothing in the record suggests that Prieto "has an abnormal potential for recidivism" or "a high potential for committing future sexual crimes," much less that pornography would be likely to contribute to future criminal conduct.  *Id.* Finally, there is no evidence in the record that pornography use contributed to Prieto's past crimes or "otherwise negatively impact[s] [Prieto's] life in a way that would benefit from 'correctional treatment.'" *Id.* at 453.

The government observes that on abuse-of-discretion review, we have previously upheld pornography bans imposed as supervised-release conditions, but the two cases upon which it relies are inapposite.  In *United States v. Ellis*, we upheld a lifetime pornography ban for a defendant who had been convicted of possessing child pornography and who, according to testimony at sentencing, had sexually molested numerous male family members during their childhood. 720 F.3d 220, 227 (5th Cir. 2013).  We reasoned that "[b]ecause Ellis's [offense of conviction] was sexual in nature it was reasonable for the district court to restrict Ellis's access to sexually stimulating material more broadly in an effort to prevent future crimes or aid in his rehabilitation." *Id.*  In *United States v. McGee*, we upheld a lifetime pornography ban for a defendant who had been convicted for failure to register and who had a "significant criminal history" of repeated sexual offenses.  559 F. App'x 323, 330 n.33 (5th Cir.), *cert. denied*, 135 S. Ct. 130 (2014).  Even though nothing in the record suggested that McGee

had accessed child pornography or that such material had contributed to his past crimes, the district court had imposed the restriction as "a precaution." *Id.* at 330. *McGee* upheld the restriction, concluding that "[i]n light of McGee's very troubling, sexually deviant criminal history," the special condition "will tend to protect the public from further crimes." *Id.* *McGee* distinguished *Salazar* by noting "McGee's significant criminal history involving several sexual assaults and his pattern for quickly reoffending following release." *Id.* at 330 n.33.

In contrast to the defendant in *Ellis*, Prieto's offense of conviction—failure to register—was not sexual in nature and did not involve sexually stimulating materials. *See United States v. Segura*, 747 F.3d 323, 327–30 (5th Cir. 2014) (holding that failure to register under SORNA is not a "sex offense" under the supervised-release guideline, U.S.S.G. § 5D1.2). And unlike the defendant in *McGee*, Prieto does not have an extensive history of repeated sexual offenses that might justify a pornography ban; his only sexual offense is his 2003 conviction for two counts of child molestation. In sum, the cases that the government cites in its brief are simply not analogous to Prieto's case, and *Salazar* provides a much closer analogue.

The only material difference between *Salazar* and Prieto's case is that the error had been preserved in *Salazar*, whereas Prieto's challenge is reviewed merely for plain error. Based on the foregoing analysis, Prieto has shown that the district court erred by imposing the pornography special condition because it was unexplained and not reasonably related to the statutory factors, and this error is plain because *Salazar* does not leave it open to reasonable dispute. As to the third prong of the plain-error standard, Prieto argues that his substantial rights are affected because he "is prohibited from viewing materials any other adult is constitutionally guaranteed the right to view," and he contends that the panel should exercise its discretion to correct

the error because of "the breadth of the special conditions and the substantial deprivation of liberty they entail."  The government counters that Prieto's substantial rights were not affected because he can ask the district court to modify the condition at any time, *see* 18 U.S.C. § 3583(e)(2) (allowing district courts to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release"), and he can also seek guidance from his probation officer on what materials are prohibited.

We reject the government's third-prong argument because the relevant inquiry is whether an error "affected the outcome of the district court proceedings," *Puckett*, 556 U.S. at 135, not whether an altered outcome can be fixed after-the-fact.  Indeed, the government's argument would preclude us from ever vacating a special condition of supervised release on plain-error review.  However, we previously have vacated plainly erroneous special conditions that did not reasonably relate to the statutory factors.  *See, e.g.*, *United States v. Flores–Guzman*, 121 F. App'x 557, 558 (5th Cir. 2005) (finding reversible plain error where a district court imposed a special condition prohibiting the defendant from drinking or using addictive substances because the condition was not reasonably related to the statutory factors); *United States v. Baez–Leon*, 112 F. App'x 321, 321–22 (5th Cir. 2004) (vacating special condition prohibiting tobacco use where the defendant was convicted of illegal reentry).

We easily conclude that the district court's error affected Prieto's substantial rights.  Had the error not occurred, Prieto would not have been subjected to the unwarranted special condition because no record evidence reveals any justification for the condition.  *Cf. United States v. Nelson*, 594 F. App'x 246, 247 (5th Cir. 2015) (substantial rights not affected where "nothing

in the record suggest[ed] that the outcome would have been different if the court had provided more extensive reasons").

Therefore, the fourth prong of plain error is determinative here. In analyzing the fourth prong, "we look to 'the degree of the error and the particular facts of the case' to determine whether to exercise our discretion." *United States v. Avalos–Martinez*, 700 F.3d 148, 154 (5th Cir. 2012) (quoting *United States v. Davis*, 602 F.3d 643, 651 (5th Cir. 2010)). We have declined to specify "a 'test' or 'factors' that should be applied in every application of the fourth prong of plain-error review when sentencing error is present because we are mindful of the Supreme Court's admonition in *Puckett* that '[t]he fourth prong is meant to be applied on a case-specific and fact-intensive basis.'" *United States v. John*, 597 F.3d 263, 286 (5th Cir. 2010) (quoting *Puckett*, 556 U.S. at 142)). Indeed, the Supreme Court has "emphasized that a *per se* approach to plain-error review is flawed." *Puckett*, 556 U.S. at 142 (internal quotation marks omitted).

We decline to exercise our discretion to correct the error in this case. While the modifiable nature of supervised-release conditions does not insulate them from third-prong scrutiny, it weighs heavily in our consideration of the fourth prong. As we have recently observed, "a modifiable condition . . . works a less significant deprivation of liberty than one which cannot be altered." *United States v. Fields*, 777 F.3d 799, 806 (5th Cir. 2015). Indeed, the Seventh Circuit has relied on the modifiable nature of supervised-release conditions to decline the exercise of its fourth-prong discretion. *See United States v. Silvious*, 512 F.3d 364, 371 (7th Cir. 2008). Although the modifiable nature of a special condition is not dispositive, a defendant faces an uphill battle when he seeks to convince us that a modifiable condition "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (alteration in original) (quoting *Olano*, 507 U.S. at 736). Prieto is

in an especially difficult position given his criminal history; at 62 years old, he molested a three-year-old girl and a five-year-old girl.  Moreover, we note that the district court's imposition of the pornography restriction came as little surprise to Prieto; the PSR had recommended the condition, and Prieto had been given an opportunity to file written objections to the PSR before sentencing.

On these facts, we cannot say that the district court's imposition of the pornography restriction so seriously threatens the fairness, integrity, or public reputation of the court system that we must correct it.  The pornography restriction was not justified by the statutory factors (at least on the record before us).  However, we do not think that the public would perceive any grave injustice when a district court imposes a modifiable condition prohibiting a defendant with a prior child-molestation conviction from purchasing, possessing, or using sexually stimulating or sexually oriented materials, the defendant's PSR recommended the condition, and the defendant forwent not one but two opportunities to object to the condition (both in his response to the PSR and at sentencing).  Therefore, because Prieto has not met his burden to persuade us that the error resulted in a serious injustice, we decline to exercise our discretion to correct the error.  *See United States v. Andaverde–Tinoco*, 741 F.3d 509, 523 (5th Cir. 2013) ("Importantly, the burden is on the defendant to demonstrate that the error affects the fairness, integrity, or public reputation of judicial proceedings."); *United States v. Escalante–Reyes*, 689 F.3d 415, 425 (5th Cir. 2012) (en banc) ("[W]e do not view the fourth prong as automatic if the other three prongs are met."); *United States v. Bohuchot*, 625 F.3d 892, 900 (5th Cir. 2010) (declining to exercise discretion, in part, because the defendants were not surprised by the error); *United States v. Smith*, 203 F.3d 884, 890 (5th Cir. 2000) (declining to exercise fourth-prong discretion); *United States v. Upton*, 91 F.3d 677, 686 (5th Cir. 1996) (same); *see also Henderson v. United*

*States*, 133 S. Ct. 1121, 1130 (2013) (noting that the third and fourth prongs are "screening criteria" designed to prevent the opening of "plain error floodgates," and that when courts apply prongs three and four of plain error review, "the fact that a defendant did not object . . . may well count against the grant of Rule 52(b) relief"); *Puckett*, 556 U.S. at 135 ("Meeting all four prongs is difficult, as it should be.").[4]

## B.

Prieto also challenges the pornography restriction on First-Amendment grounds. However, as outlined above, Prieto cannot meet the fourth prong of the plain-error standard. Moreover, his First-Amendment challenge fails for an additional reason: Prieto cannot show that any constitutional error was plain.

We have previously upheld—on plain-error review—special conditions nearly identical to Prieto's, citing the lack of existing law that would make any First Amendment error obvious. *See United States v. Miller*, 665 F.3d 114, 136 (5th Cir. 2011) ("Because our law is unsettled, and the law of our sister circuits is not uniformly in the defendant's favor, plain error is not demonstrated."); *United States v. Simington*, 484 F. App'x 860, 864 (5th Cir. 2012) ("Given the lack of clear direction regarding the First Amendment implications of the challenged condition, Simington has not carried his burden of showing that the district court's putative error was plain."); *United States v. Hilliker*, 469 F. App'x 386, 389 (5th Cir. 2012) ("[B]ecause the law is unsettled regarding First Amendment overbreadth challenges, Hilliker cannot demonstrate error that is

---

[4] Because we conclude that the district court's imposition of the pornography restriction does not warrant correction under the fourth prong of plain-error review, it is unnecessary for us to consider Prieto's additional argument that the restriction is a greater deprivation of liberty than that reasonably necessary to deter, protect the public, or rehabilitate Prieto.

plain because such an error must be clear under existing law."). Therefore, even assuming there was error, any such error could not be plain.

## IV.

Prieto also challenges the geographic restriction. However, he cannot show plain error because we recently rejected a plain-error challenge to an identical condition in *Fields*, 777 F.3d 799. Indeed, Prieto noted in his initial brief that "[t]his condition has been challenged in a case currently before the Court, *United States v. Fields*, No. 13-51060."

In *Fields*, the defendant's criminal history involved only "a single, remote sexual offense." *Id.* at 804. Distinguishing *Salazar*, we noted that this single offense—a sexual assault of a child—bore "some relationship to the special condition limiting access to places frequented by children" because "access to children was a necessary predicate to Fields's original sexual assault offense," whereas in *Salazar*, "there was no evidence that pornography had anything to do with the underlying sex crime." *Id.* We also took into account the defendant's refusal to register, holding that:

> Fields's restrictions can be justified either because his history of noncompliance with punitive restrictions requires a harsher response, the second statutory consideration, or because the defendant, who has shown an unwillingness to comply with a provision designed to protect the general populace, poses a greater risk to the public, the third statutory consideration.

*Id.* We also held that the restriction was not a greater deprivation of the defendant's liberty than reasonably necessary, distinguishing *United States v. Windless*, 719 F.3d 415 (5th Cir. 2013)—the precedent upon which Prieto relies—on the ground that Fields's restriction was less severe and more well-defined than the one invalidated in *Windless*, which prohibited even "indirect contact" with minors such as visiting a grocery store. *Id.* at 806.

No. 14-50653

The geographic restriction that Prieto challenges is identical to the one upheld in *Fields*. Moreover, like the defendant in *Fields*, Prieto has committed child molestation in the past, and his failure to register suggests a need for deterrence and protection of the public. Therefore, *Fields* forecloses his plain-error challenge to the geographic restriction.

We note, however, that *Fields* found the geographic restriction to be no greater a deprivation of liberty than reasonably necessary only after giving it a limiting construction. In *Fields*, we observed that by confining its reach to "places where a minor or minors are *known to frequent*," the geographic restriction banned the supervisee from "locations . . . that children 'visit often' or 'associate with, be in, or resort to often or habitually.'" 777 F.3d at 806 (quoting Webster's New Int'l Dictionary 909 (3d ed. 1981)). We further observed that "'places where minors are known to frequent' is an objective standard that can be determined in advance, especially through consultation with [the] probation officer." *Id.* We specifically clarified that "places like schools and playgrounds" are included in the ban, but "grocery stores, places of worship, transportation hubs, and most stores" are not. *Id.* We construe Prieto's geographic restriction in the same way. Because Prieto's geographic restriction is tailored to "places where a minor or minors are *known to frequent*," the restriction on his liberty is not as severe as the one at issue in *Windless*, and in light of *Fields*, Prieto cannot demonstrate plain error.

## V.

Based on the foregoing discussion, we AFFIRM.