# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 2, 2021

Lyle W. Cayce
Clerk

No. 19-11261

United States of America,

*Plaintiff—Appellee*,

*versus*

Edward Sanchez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-235

Before Jones, Smith, and Elrod, *Circuit Judges*.

Per Curiam:*

Edward Sanchez was convicted of sexually assaulting his then-girlfriend's daughter, and in 1992 he was sentenced to seven years of probation for that offense. In 2009, Sanchez pleaded guilty to trafficking methamphetamine. In 2019, the district court sentenced Sanchez for violating the terms of his supervised release for the drug-trafficking offense.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-11261

The district court imposed various special conditions of supervised release relating to Sanchez's sexual-assault offense. Sanchez challenges three of those special conditions on appeal. Because the treatment condition, location restriction, and computer-monitoring conditions are reasonably related to Sanchez's criminal history, we AFFIRM.

I.

Edward Sanchez was convicted in Texas state court for "Indecency With a Child – Contact" for touching the genitals of a five-year-old girl, and in 1992 he was sentenced to seven years of probation for that offense. *See* Tex. Penal Code § 21.11(a)(1) (West 1984). The sentence was for one instance occurring "on or about May 28, 1987." The record indicates further accusations that Sanchez sexually abused the girl—his ex-girlfriend's daughter—for five years, beginning when she was four years old.

The record recounts four occasions of sexual abuse in detail. In each instance Sanchez either touched the child's genitals or forced the child to touch his genitals or both. At least three of the instances appear to have occurred in the child's home. One of those instances occurred when the child's mother was taking a bath in the other room. Sanchez has denied that those instances occurred. Instead, he said that on one occasion the child walked in on him engaging in sexual activity with the child's babysitter. According to Sanchez, he and the babysitter "continued sexual contact after the child walked in," and the child "kissed his penis 2, 3, or 4 times."[1]

The Texas court sentenced Sanchez to seven years of probation for his sexual-assault offense and ordered him "to participate in sex offender treatment." Sanchez did not meet the attendance requirements of that

---

[1] Sanchez omits this detail from his brief on appeal.

treatment, and he was "unsuccessfully discharged." While on probation, Sanchez also committed a separate drug offense—possession of cocaine with intent to deliver. The Texas court revoked Sanchez's probation and sentenced him to seven years in prison for the revocation and seven years for the drug offense, to run concurrently. Sanchez was released from Texas state prison in 2004.

In 2008, Sanchez transported $8,800 worth of methamphetamine from Texas to Missouri to sell to a repeat buyer there. Sanchez was arrested and indicted in the Eastern District of Missouri. There he pleaded guilty to possession of, with intent to distribute, 50 grams or more of a substance containing methamphetamine. 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii). The most recent conditions of supervised release for this 2008 drug-trafficking offense are the subject of this appeal.

Sanchez was initially sentenced to 135 months in prison, followed by eight years of supervised release. The prison term was later reduced to 120 months. The initial sentence included special conditions of supervised release related to the current drug-trafficking offense. It did not contain conditions related to Sanchez's 1987 sexual-assault offense.

In 2017, at the end of his term of imprisonment, Sanchez requested to relocate home to Fort Worth in the Northern District of Texas for his supervised release. The probation office for the Northern District of Texas requested that the district court add conditions of supervised release related to Sanchez's 1987 sexual-assault offense before relocation. The additional conditions (1) prevented Sanchez from possessing pornography or patronizing any place where pornography was available, (2) required Sanchez to register as a sex offender, and (3) required Sanchez to "participate in sex-offender treatment." With Sanchez's consent, the District Court for the

No. 19-11261

Eastern District of Missouri added those conditions, and Sanchez moved back to Fort Worth.

Sanchez did not comply with these added conditions of supervised release. He once again failed to complete his sex-offender treatment, and he also purchased lotion from a store where pornography was available. Just as he did with the sex-offender treatment ordered by the Texas state court following his conviction for the 1987 sexual-assault offense, Sanchez missed treatment sessions. Sanchez also continued to drink alcohol, have unsupervised contact with children, and deny responsibility for his 1987 sexual-assault offense—all violations of or a lack of progress in his sex-offender treatment. Sanchez's probation officer was also concerned by his visits to Chuck E. Cheese, a water park, and Trinity Park, as well as his weekly contact with his grandchildren.

In response, in June 2019 the probation officer moved for the District Court for the Eastern District of Missouri to add a special condition preventing Sanchez from "unsupervised contact with minors . . . at any location, including" places where children "frequent or congregate." The probation officer also moved to transfer Sanchez's case to the District Court for the Northern District of Texas for convenience. The district court added the special condition, and the case was transferred.

In the Northern District of Texas, Sanchez continued to violate the conditions of his supervised release, including by living with his eleven-year-old grandniece. He was "unsuccessfully discharged" from his sex-offender treatment in September 2019 after having completed only 14% of his treatment plan. Sanchez continued to minimize his responsibility for his 1987 sexual-assault offense, and he failed to submit a report to his probation officer.

No. 19-11261

In October 2019, Sanchez was arrested for violating the conditions of his supervised release, and the district court scheduled a revocation hearing following Sanchez's initial appearance. At the revocation hearing, Sanchez pleaded true to three violations: (1) failing to complete sex-offender treatment; (2) patronizing a place where pornography was available; and (3) failing to submit a monthly report for September 2019.

The district court revoked Sanchez's supervised release and sentenced him to six months' imprisonment and twenty-four months of supervised release. Sanchez objected to the supervised release and the special conditions of supervised release. On appeal, Sanchez challenges three special conditions imposed by the district court:

> (1) Sanchez must "participate in sex-offender treatment services as directed by the probation officer until successfully discharged";

> (2) Sanchez cannot "have access to or loiter near school grounds, parks, arcades, playgrounds, amusement parks, or other places where children congregate, except as may be approved by the probation officer";

> (3) Sanchez is subject to a number of computer-monitoring conditions including: "ongoing monitoring of his[] computer," preliminary and subsequent searches of his computer and internet-usage data, a limit on the devices and software he may use, a ban on certain social-media websites, and a ban on peer-to-peer messaging, file sharing, or chat rooms.

## II.

We review preserved challenges to conditions of supervised release for abuse of discretion. *United States v. Gordon*, 838 F.3d 597, 604 (5th Cir. 2016). If the defendant fails to preserve a claim of error, however, we review for plain error only. *Id.* The government contends that Sanchez failed to

No. 19-11261

object to (1) the condition that he participate in sex-offender treatment and (2) the condition restricting his use of social media. We disagree.

Preservation of error in the district court is governed by Federal Rule of Criminal Procedure 51, which states, "A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b). This rule gives parties two options to preserve error: (1) inform the court of the desired action; or (2) object to the court's action and state the grounds for the objection. *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 764 (2020).

The Supreme Court recently further explained the first option, saying, "By 'informing the court' of the 'action' he 'wishes the court to take,' . . . a party ordinarily brings to the court's attention his objection to a contrary decision."[2] *Id.* at 766 (quoting Fed. R. Crim. P. 51(b)). Preservation

---

[2] In *Holguin-Hernandez*, the defendant advocated for a sentence below the recommended guidelines range. 140 S. Ct. at 765. The district court imposed a sentence "at the bottom of, but not below, the Guidelines range." *Id.* The defendant did not object after the imposition of the sentence, and so this court reviewed for plain error. *United States v. Holguin-Hernandez*, 746 F. App'x 403, 403 (5th Cir. 2018), *rev'd*, 140 S. Ct. 762 (2020).

The Supreme Court did not decide whether Holguin-Hernandez himself sufficiently preserved error in his case. *Holguin-Hernandez*, 140 S. Ct. at 766–67; *id.* at 767–78 (Alito, J., concurring). The case was remanded to this court. On remand, we did not decide whether Holguin-Hernandez preserved error because he "would not prevail even under the less deferential abuse of discretion standard." *United States v. Holguin-Hernandez*, 955 F.3d 519, 520 n.1 (5th Cir. 2020).

We have since applied the Supreme Court's holding in *Holguin-Hernandez* to other cases involving sentencing challenges. In some of those cases, the claim of error was preserved; in others, it was not preserved. *Compare, e.g.*, *United States v. Cano*, 981 F.3d 422, 425 (5th Cir. 2020) (determining Appellant preserved his substantive-reasonableness objection), *and United States v. Hinojosa-Almance*, 977 F.3d 407, 412 & n.13 (5th Cir. 2020) (reviewing for abuse of discretion when Appellant advocated for a shorter sentence but did

of error does not "require an objecting party to use any particular language or even to wait until the court issues its ruling." *Id.* at 766. In the sentencing context, a post-pronouncement objection is not necessary if the defendant had already advocated for a more lenient sentence. *See id.*; *see also United States v. Hinojosa-Almance*, 977 F.3d 407, 412 n.13 (5th Cir. 2020).

At the sentencing hearing, Sanchez's counsel advocated for the court not to reimpose special conditions related to Sanchez's 1987 sexual-assault conviction. Sanchez then specifically identified two conditions at issue: the condition added in 2017 that Sanchez participate in sex-offender treatment— "all of the sudden in 2017 he's asked to go to sex offender treatment"—and the condition added in 2019 that he avoid places where children congregate— "Later there are conditions imposed about not being around children or going to places where children may be." Sanchez's counsel elaborated on the latter condition, contending that Sanchez's trips to Chuck E. Cheese and water parks merely showed that he was trying to be an involved parent and grandparent.

Sanchez's counsel then said, "And one of the things we will be asking for is to remove these conditions because he can't live the rest of his life avoiding places where children may be." The phrase "these conditions" clearly refers to both the treatment condition and the location restriction Sanchez's counsel had just discussed. Sanchez specifically identified the

---

not object to the sentence after it was pronounced), *and United States v. Redmond*, 965 F.3d 416, 421 (5th Cir. 2020) (reviewing for abuse of discretion when the Appellant "moved for a downward variance" and the district court instead "imposed an above-Guidelines sentence"), *petition for cert. filed* (Dec. 10, 2020) (No. 20-6631), *with, e.g., United States v. Napper*, 978 F.3d 118, 124 (5th Cir. 2020) (reviewing substantive reasonableness for plain error because Appellant "did not request a lower revocation sentence or object to the sentence imposed"), *and United States v. Gonzalez-Cortez*, 801 F. App'x 311, 312 n.1 (5th Cir. 2020) (reviewing for plain error when Appellant "made no objection of any kind" in the district court).

treatment condition at issue in this appeal and asked the district court not to impose it.  Counsel supported her request with the argument that "the additional conditions . . . are not necessary in light of the fact that he is not a danger to the community."

The core question for determining whether a claim of error was preserved is "simply whether the claimed error was 'brought to the court's attention.'" *Holguin-Hernandez*, 140 S. Ct. at 766 (quoting Fed. R. Crim. P. 52(b)).  Sanchez's specific, pre-pronouncement request brought the treatment condition to the court's attention.  Further, on appeal, Sanchez advances the same argument he did at the sentencing hearing: the treatment condition is "unnecessary."  Sanchez "alert[ed] the district court to the nature of the alleged error" by arguing on the same ground in both the district court and on appeal.  *United States v. Maes*, 961 F.3d 366, 372 (5th Cir. 2020) (quoting *United States v. Johnson*, 943 F.3d 214, 221 (5th Cir. 2019)).  Sanchez preserved this claim of error, and so we review the treatment condition for abuse of discretion.

Sanchez also sufficiently objected to the condition restricting his use of social media to preserve that claim of error on appeal.  The government attempts to separate the ban on certain social-media websites from the other computer-monitoring restrictions imposed by the district court.  That separation, however, does not reflect either the district court's judgment or the dialogue between the district court and Sanchez's counsel at sentencing.

In both the written judgment and the district court's oral pronouncement, the district court introduced the computer-monitoring requirement and then listed related restrictions: ongoing monitoring, initial and subsequent computer searches, release of internet-service-provider data, a restriction to using only the one approved computer, a ban on software designed to circumvent the monitoring software, a ban on certain social-

media websites, and a ban on peer-to-peer messaging and file-sharing services.

At the sentencing hearing, Sanchez's counsel objected saying, "in particular, we object to the computer monitoring conditions. . . . We don't believe that the facts presented to the Court really necessitate it. . . . And to the extent there are any concerns, nobody is saying anything about inappropriate behavior on the internet."  A little later on, the district court replied to Sanchez's objection:

> And I think from when he was convicted until today there has been a [sea] change of what is accessible by way of computer and so it's not necessarily that he has previously had problems with using the computer to access minors or to pose a risk to minors, it's that times have changed and so the availability of doing that has changed from when he was convicted, and so I think it is a reasonable approach for doing this.

Sanchez's counsel's objection to the "computer monitoring conditions" followed by her argument that nobody accused Sanchez of "inappropriate behavior on the internet," together indicate that she was thinking about all of the computer-monitoring conditions together.  This naturally includes the social-media restriction, because social media is the main platform for behavior (appropriate or not) on the internet.

The district court's comments indicate that the court was thinking about the computer-monitoring conditions in the same way: as a package. The district court expressed concerns about a "[sea] change of what is accessible by way of computer," "access to minors," and new technology changing the "availability" of posing a risk to minors.  Those concerns clearly contemplate social media, which is a large part of the "sea change" in internet activity and serves as a platform hosting both minors and adults.

No. 19-11261

Sanchez's objection and arguments and the district court's own comments clearly show that the social-media restriction was "br[ought] to the court's attention" as an integral part of the computer-monitoring conditions. *Holguin-Hernandez*, 140 S. Ct. at 766. Sanchez preserved this claim of error, so we review the computer-monitoring conditions as a whole, including the social-media restriction, for abuse of discretion.

The government does not dispute that Sanchez preserved his claim of error for imposition of supervised release and the location restriction. The record makes clear that Sanchez's counsel objected to any term of supervised release and the condition that he not access or loiter near places where minors congregate. Sanchez preserved that claim of error as well, and we review for abuse of discretion.

### III.

We now turn to the merits. Sanchez challenges the imposition of supervised release and the three conditions of supervised release described above: (1) the sex-offender treatment condition, (2) the location restriction, and (3) the computer-monitoring conditions.

### A.

The district court did not abuse its discretion by imposing a term of supervised release. Sanchez cursorily asserts on appeal that the district court erred by imposing a term of twenty-four months of supervised release. In his statement of the issues presented for review, Sanchez raises the issue whether "the district court abused its discretion by re-imposing supervised release." In his argument, however, Sanchez devotes only one sentence and a footnote to this issue: "He [Sanchez] does dispute the court's decision to re-impose supervised release. . . . Mr. Sanchez acknowledges that the court has discretion to re-impose supervised release upon revocation. 18 U.S.C.

§ 3583(h). But it is not required, and it was not necessary here." Sanchez's unsupported assertion that supervised release was "not necessary" does not come close to establishing an abuse of discretion.

## B.

The district court did not abuse its discretion by imposing the condition that Sanchez participate in sex-offender treatment.

District courts have "broad discretion" to impose any condition of supervised release it considers appropriate. *United States v. Miller*, 665 F.3d 114, 132 (5th Cir. 2011). That "broad discretion" is limited by three considerations.

First, the condition must be "reasonably related to the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B)–(D)," namely:

> (1) "the nature and circumstances of the offense and the history and characteristics of the defendant,"
>
> (2) the need "to afford adequate deterrence to criminal conduct,"
>
> (3) the need "to protect the public from further crimes of the defendant," and
>
> (4) the need "to provide the defendant with needed [training], medical care, or other correctional treatment in the most effective manner."

*United States v. Caravayo*, 809 F.3d 269, 273 (5th Cir. 2015) (quoting *United States v. Paul*, 274 F.3d 155, 165 (5th Cir. 2001)); *see also* 18 U.S.C. § 3553(a).

Second, the condition must "involve[] no greater deprivation of liberty than is reasonably necessary" to promote the last three factors. *Caravayo*, 809 F.3d at 273 (quoting *Paul*, 274 F.3d at 165 n.12); *see also* 18 U.S.C. § 3583(d)(2).

Third, the condition must be "consistent with any pertinent policy statements issued by the [U.S.] Sentencing Commission." *Caravayo*, 809 F.3d at 273 n.2 (quoting § 3583(d)(3)).

Sanchez launches several attacks on the treatment condition in an attempt to show that it fails to account for one or more of these three considerations. The foundation of his argument, however, is that his sexual-assault offense is too remote to justify sex-offender treatment for his current drug-trafficking offense. Our caselaw and Sanchez's record show otherwise.

We have previously upheld sex-offender treatment conditions "despite the age" of the prior sexual offense, even when the offense of conviction was not a sexual offense. *Sealed Appellee v. Sealed Appellant*, 937 F.3d 392, 404 (5th Cir. 2019); *see also, e.g.*, *United States v. Fields*, 777 F.3d 799, 803–04 (5th Cir. 2015). In *Fields*, we considered the defendant's "single, remote sexual offense" and the "defendant's history" to determine that the district court did not abuse its discretion. 777 F.3d at 804.

In this case, Sanchez also has a "single, remote sexual offense," which he committed in 1987. The record indicates further accusations spanning a four-year period around that time as well. Just like the defendant in *Fields*, Sanchez has also "shown an unwillingness to comply with a provision [*i.e.*, sex-offender treatment] designed to protect the general populace." *Id.* Sanchez's history includes repeated failures to complete sex-offender treatment or accept full responsibility for his offense. Sanchez was most recently unsuccessfully discharged from sex-offender treatment in September 2019. The current "treatment condition bears some relationship to" Sanchez's sexual-assault offense "because it will enable physicians to implement the necessary rehabilitating care." *Sealed Appellant*, 937 F.3d at 404. The district court did not abuse its discretion in requiring sex-offender treatment for Sanchez's twenty-four months of supervised release.

No. 19-11261

## C.

The district court did not abuse its discretion by imposing the condition that Sanchez not access or loiter near certain defined locations as well as "places where children congregate."

Sanchez challenges this condition without citing a single case for support. Instead, Sanchez blankly asserts that "[h]e wants to go to the park, with his daughter and her children. His family knows him better than anyone, and they allowed him to participate in these sorts of activities. This Court should defer to their better judgment about Mr. Sanchez's unique history and characteristics." Sanchez's desire, without more, is not a basis for holding that the district court abused its discretion.

We have previously limited the scope of forbidden locations in similar conditions. In *Fields*, we upheld a condition that prevented the defendant "from 'going to places where a minor or minors are *known to frequent* without prior approval of the probation officer.'" 777 F.3d at 806 (emphasis in original). We highlighted the importance of the word "frequent" as a modifier because it "limits the zone of forbidden locations to those that children 'visit often' or 'associate with, be in, or resort to often or habitually.'" *Id.* Sanchez's location condition uses the term "congregate," which similarly "limits the zone of forbidden locations." *See id.* Despite Sanchez's concerns before the district court, this condition will not prevent him from visiting Walmart or similar locations. Rather, the condition prevents him from visiting the defined locations and locations where children "come together in a group, crowd, or assembly." *Congregate*, *The American Heritage Dictionary* 388 (5th ed. 2012). "By our read, this would include places like schools and playgrounds, but would not include locations such as grocery stores, places of worship, transportation hubs, and most stores. Children, to be sure, can and do attend such places—but they do not

13

[congregate at] them." *Fields*, 777 F.3d at 806. The district court did not abuse its discretion in imposing the location restriction.

### D.

Finally, the district court did not abuse its discretion in imposing computer-monitoring conditions for Sanchez's two years of supervised release. In advocating for this result, the government points us to *United States v. McGee* and *United States v. Hilliker*. 559 F. App'x 323 (5th Cir. 2014); 469 F. App'x 386 (5th Cir. 2012).

Just as in *McGee* and *Hilliker*, the computer-monitoring conditions in this case are "precaution[ary], purely protective." 559 F. App'x at 330; *see also* 469 F. App'x at 389. We upheld those conditions, making it difficult to say the district court abused its discretion in imposing similar conditions in this case. We note as well that Sanchez is subject to computer monitoring for only two years—a modest duration in light of *McGee* and *Hilliker*. *See* 559 F.App'x at 324; 469 F. App'x at 387. The short duration also distinguishes this case from *United States v. Fernandez*, in which we determined that the district court went too far in imposing "life-term" computer restrictions based only on "general concerns about recidivism." 776 F.3d 344, 345, 348 (5th Cir. 2015).

The propriety of a special condition of supervised release depends on the circumstances of the case and the defendant. *See Paul*, 274 F.3d at 164–65. That is why we give great deference to the district court, which is most familiar with the details of the defendant's offense, history, and other relevant circumstances. *See Gall v. United States*, 552 U.S. 38, 51–52 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 357–58 (2007) ("The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the . . . appeals court."). On this record, we cannot say the district court abused its discretion.

No. 19-11261

\*      \*      \*

For the reasons set forth above, we AFFIRM.