# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 8, 2020

Lyle W. Cayce
Clerk

No. 18-10442

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

TRYSTAN KEUN NAPPER,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:04-CR-41-31

Before OWEN, *Chief Judge*, and DAVIS and SOUTHWICK, *Circuit Judges*.
W. EUGENE DAVIS, *Circuit Judge*:

Trystan Keun Napper appeals his 37-month sentence imposed following the revocation of his second term of supervised release. Napper argues, for the first time on appeal, that his sentence violates the terms of his plea agreement, that the sentence is plainly unreasonable on substantive and procedural grounds, and that the district court failed to hold his revocation hearing within a reasonable time. Because we determine that the district court did not plainly err, we AFFIRM.

# I.  BACKGROUND

Napper pled guilty, pursuant to a plea agreement, to possessing a firearm in furtherance of a drug-trafficking crime and aiding and abetting, in violation of 18 U.S.C. §§ 2 and 924(c). The plea agreement contained numerous provisions setting forth, inter alia, Napper's rights as a defendant, his waiver of those rights by pleading guilty, his agreement to cooperate with the Government, and the Government's agreement to dismiss the charges of the indictment to which Napper did not plead guilty. Pertinent to the issues on appeal, Section 3 of the plea agreement provided the following:

> 3.    **Sentence**:    The  minimum  and  maximum penalties the Court can impose include:
> a.    imprisonment for a period not less than 5 years nor more than life;
> b.    a fine not to exceed $250,000.00;
> c.    a term of supervised release of not more than 5 years,  which  must  follow  any  term  of imprisonment. If Napper violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;
>  . . . .
> e.    a mandatory special assessment of $100.00[.]

The agreement stated that "both parties agree, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that a specific sentence of 60 months is the appropriate sentence in this case." The agreement further provided: "Napper understands he will only be able to withdraw his plea of guilty if the Court does not follow the specific sentencing recommendation as set out above."

Consistent with the plea agreement, the district court sentenced Napper to 60 months in prison. The court also ordered the maximum term of supervised release (five years/60 months) and ordered Napper to pay a $100 special assessment.

No. 18-10442

After Napper served his 60-month prison term, and approximately one year into Napper's supervised release, the Government filed a motion to revoke, alleging that Napper had violated various mandatory and standard conditions of his supervision. Specifically, the Government asserted that Napper had absconded from supervision, failed to participate in drug testing, and possessed cocaine for distribution. After conducting a revocation hearing, the district court granted the Government's motion and revoked Napper's supervised release. The district court imposed a revocation sentence of 37 months in prison, followed by 23 months of supervised release.

After Napper served his 37-month revocation sentence, he violated the conditions of his newly-imposed term of supervised release by committing aggravated assault with a deadly weapon. Napper was arrested in December 2012, pled guilty to the crime in January 2014, and was sentenced to three years in state custody. Napper remained in state custody from December 2012 until his release in September 2016. In August 2017, Napper was charged in federal court with conspiracy to distribute and possession with intent to distribute 500 grams or more of methamphetamine. At that point, the Government also moved to revoke Napper's second term of supervised release based on his state aggravated assault conviction and his federal drug crime. In October 2017, Napper pled guilty to the federal drug offense pursuant to a plea agreement. The Government agreed that 240 months in prison was an appropriate sentence.

As Napper requested, the district court set Napper's sentencing for the federal drug offense and his revocation hearing on the same day. Consistent with the plea agreement, the district court sentenced Napper to 240 months for the drug offense and ordered that sentence to run consecutively to any sentence imposed in his state parole revocation proceeding and in his supervised release revocation hearing. During his supervised release revocation hearing, which the district court conducted

immediately following Napper's sentencing for the drug offense, Napper admitted to the violations of supervised release alleged by the Government. The court therefore revoked Napper's second term of supervised release and imposed a revocation sentence of 37 months, but no further supervised release. Napper timely appealed.

## II. DISCUSSION

Napper argues that the 37-month sentence imposed by the district court after revoking his second term of supervised release violates the terms of his plea agreement. He further contends that the sentence was plainly unreasonable on both procedural and substantive grounds. Finally, Napper asserts that his second revocation hearing was not held within a "reasonable time," in violation of Federal Rule of Criminal Procedure 32.1 and the Due Process Clause.

### A. Standard of Review

Napper acknowledges that because he failed to raise these arguments in the district court, our review is for plain error only under Federal Rule of Criminal Procedure 52(b).[1] Under the plain-error standard, Napper must show that (1) there was an error or defect in the district court proceeding; (2) the error was clear or obvious; and (3) the error affected his substantial rights.[2] If Napper is able to satisfy these requirements, then we have the discretion to remedy the error, but should do so "only if the error seriously

---

[1] Rule 52(b) provides: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

[2] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (specifically holding that plain-error standard applies to claims that a plea agreement has been breached when such claim is raised for the first time on appeal).

affects the fairness, integrity or public reputation of judicial proceedings."[3] The Supreme Court has noted that satisfying the plain-error standard "is difficult, as it should be."[4]

## B. Analysis

### 1. Plea Agreement

Napper relies on Section 3 of his plea agreement in asserting that his 37-month sentence imposed after revocation of his second term of supervised release violates the terms of the agreement. Section 3 (outlined above) listed "[t]he minimum and maximum penalties the [district] [c]ourt [could] impose" for Napper's guilty plea to possessing a firearm in furtherance of a drug-trafficking crime and aiding and abetting. Regarding supervised release, Section 3 provided that the district court could impose "a term of supervised release of not more than 5 years" and that "[i]f Napper violate[d] the conditions of supervised release, he could be imprisoned for the entire term of supervised release[.]"

Napper argues that based on this language, he reasonably understood that he could not "receive revocation sentences exceeding 60 months imprisonment," the length of his first term of supervised release. He contends that his 37-month sentence imposed after the revocation of his second term of supervised release is a breach of his plea agreement because when added to his first 37-month revocation sentence, the total of his revocation sentences equals 74 months—14 months more than his initial 60-month term of supervised release.

---

[3] *Id.* (internal quotation marks and citation omitted).

[4] *Id.* (internal quotation marks and citation omitted).

Napper further asserts that he also reasonably believed, based on the language of Section 3, that he could not "receive a revocation term of imprisonment exceeding the term of release just revoked." He therefore asserts that, even if viewed on its own, his second revocation sentence of 37 months breaches the plea agreement because it is 14 months greater than the term of supervised release (23 months) just revoked. Napper does not seek to withdraw his plea agreement; he seeks to enforce it. He contends that specific performance of the plea agreement requires this court to remand this matter to the district court for resentencing and imposition of a revocation sentence of 23 months or less.

In determining whether a plea agreement has been breached, "this court applies general principles of contract law and considers whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement."[5] "The plain language of the agreement, taken with the intent of the parties at the time the agreement was executed, controls."[6]

Contrary to Napper's contentions, the plea agreement did not include any agreement regarding the prison term that could be imposed upon revocation of a second term of supervised release. The plea agreement concerned only one term of supervised release—the term imposed by the district court immediately following Napper's guilty plea. Specifically, in the section of the agreement preceding Section 3, the agreement provided that Napper was pleading guilty to Count 15 of the indictment, charging a violation of §§ 2 and 924(c), aiding and abetting possession of a firearm in

---

[5] *United States v. Loza-Garcia*, 670 F.3d 639, 642 (5th Cir. 2012) (internal quotation marks and citation omitted).

[6] *United States v. Williams*, 949 F.3d 237, 238 (5th Cir. 2020) (citation omitted).

furtherance of a drug-trafficking crime. Section 3 then listed the minimum and maximum penalties the district court could impose for Napper's plea of guilty to that crime. The list of penalties included "a term of supervised release of not more than 5 years" and explained that "[i]f Napper violate[d] the conditions of supervised release, he could be imprisoned for the entire term of supervised release[.]"

The plain language of the plea agreement makes clear that the words, "a term of supervised release," in Section 3 means the initial term of supervised release imposed by the district court for Napper's plea of guilty to the drug-trafficking crime.[7] That term of supervised release could not be more than five years, and if Napper violated the conditions of that supervision, he could be imprisoned for the entire term.[8] The district court imposed the maximum term of supervised release, five years, and upon later determining that Napper violated the conditions of that supervision, the district court imprisoned Napper for less than five years—37 months. The plea agreement was not breached.

---

[7] In our decision in *United States v. Hampton*, we interpreted identical language ("a term of supervised release") in the revocation statute, 18 U.S.C. § 3583(e)(3), to mean "one particular" term of supervised release. *See* 633 F.3d 334, 338 (5th Cir. 2011).

[8] Napper was subject to whatever penalty the law provided as to revocation of a second term of supervised release, and he does not argue that his sentence violated the relevant revocation statute, § 3583. Under our precedent interpreting that statute, the district court's imposition of a 37-month prison term for Napper's violation of his second term of supervised release was lawful because it was less than five years, the maximum term of supervised release for a Class A felony. *See* § 3583(b)(1) (providing that "the authorized term of supervised release" for a Class A felony is not more than five years); *Hampton*, 633 F.3d at 338 (holding that § 3583(e)(3) does not require aggregation of revocation imprisonment); *United States v. Shabazz*, 633 F.3d 342, 345 (5th Cir. 2011) (holding that § 3583(e)(3) "limits only the amount of revocation imprisonment the revoking court may impose each time it revokes a defendant's supervised release").

In sum, Napper fails to show any error, plain or otherwise, committed by the district court with respect to his claim that his 37-month revocation sentence constitutes a breach of his plea agreement.

### 2. Substantive Reasonableness

Napper next asserts that his 37-month revocation sentence is substantively unreasonable. He acknowledges that the district court properly considered the sentencing factors of deterrence and protection of the public, but he argues that his 37-month sentence is "plainly excessive" when considered with the consecutive 240-month prison term the district court imposed for the new drug offense. He further asserts that considering he will be 53 years old on his ultimate release date, his risk of re-offending will be significantly reduced.

A revocation sentence is "substantively unreasonable" where the district court did not take into account a factor that should have received significant weight, gave significant weight to an irrelevant or improper factor, or made a clear error in judgment when balancing the sentencing factors.[9] As the Supreme Court has recently held, because Napper did not request a lower revocation sentence or object to the sentence imposed at the revocation hearing, his claim challenging the substantive reasonableness of his revocation sentence is reviewed for plain error.[10]

As the Government contends, Napper's arguments challenging his revocation sentence amount to a claim that the district court did not take into account a factor that should have received significant weight—his 240-month sentence for his drug offense. We addressed and rejected a similar

---

[9] *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013).

[10] *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766–67 (2020).

argument in our decision in *United States v. Daughenbaugh*.[11] In that case, the district court imposed a 120-month prison sentence on the defendant's new offense and a consecutive 60-month revocation sentence. The defendant argued that the sentences should have run concurrently and that the consecutive 60-month revocation sentence was "greater than necessary" to satisfy the statutory sentencing goals.[12] He additionally argued that considering his age, he would pose no danger to the community if he were released from prison earlier.[13]

In rejecting the defendant's arguments in *Daughenbaugh*, we noted that "[a] sentence imposed on revocation of supervised release punishes a breach of trust for violating the conditions of supervision" and that it consequently is "separate" and "distinct from the sentence imposed on the new offense."[14] We further noted that the revocation sentence was within the range recommended by the policy statements of the Sentencing Guidelines, that the district court had the discretion to order consecutive sentences, and that the defendant's conclusory assertion that his combined sentences were "greater than necessary" to satisfy the statutory sentencing goals was insufficient to rebut the presumption of reasonableness that attached to his within-guidelines revocation sentence.[15] Our reasoning is equally applicable here.

---

[11] 793 F. App'x 237 (5th Cir. 2019). Although we are not bound by an unpublished decision, *see* 5TH CIR. R. 47.5, we find the reasoning in *Daughenbaugh* persuasive and adopt it here.

[12] 793 F. App'x at 240.

[13] *Id.*

[14] *Id.* (citations omitted).

[15] *Id.* at 240–41 (citations omitted).

Napper's 37-month revocation sentence was imposed to punish his breach of trust for violating his conditions of supervision and was separate and distinct from the sentence imposed for his guilty plea to conspiracy to distribute and possession with intent to distribute 500 grams or more of methamphetamine. His revocation sentence was within the recommended 30 to 37-month range of the policy statements of the Guidelines, the district court had the discretion to order consecutive sentences, and Napper's conclusory assertion that his revocation sentence is "plainly excessive" when considered with his 240-month sentence on his new drug offense is insufficient to rebut the presumption that his within-guidelines revocation sentence is reasonable.

Based on the foregoing, we conclude that Napper has failed to demonstrate any error, plain or otherwise, regarding the substantive reasonableness of his sentence.

### 3.  Procedural Reasonableness

Napper argues that his 37-month revocation sentence is also procedurally unreasonable. He contends that the district court's stated reasons, deterrence and protection of the public, for imposing his sentence were "plainly insufficient." Citing to numerous cases in which this court has affirmed the district court's sentencing decisions, Napper further asserts that because the district court herein frequently relies on these identical reasons to justify its imposition of sentences in very different cases, those reasons no longer provide reassurance that the sentencing process was "reasoned."

Because Napper failed to raise his objection in the district court, our review is for plain error only.[16] Under 18 U.S.C. § 3553(c), the district court,

---

[16] *Holguin-Hernandez*, 140 S. Ct. at 766–67.

No. 18-10442

"at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence." As the Supreme Court has explained, and Napper acknowledges, "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation."[17] Specifically, "[c]ircumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence . . . in the typical case, and that the judge has found that the case before him is typical."[18] Unless a party "argues that the Guidelines reflect an unsound judgment . . . or argues for departure, the judge normally need say no more."[19]

In this case, the district court's statement of reasons for imposing a 37-month revocation sentence was brief but legally sufficient. After Napper admitted to the allegations in the Government's motion to revoke, and the district court granted the motion, the court found "a Grade A violation, with a Criminal History Category of III," as called for by the policy statements of the Guidelines. The district court then sentenced Napper to 37 months in prison, which was within the 30 to 37-month imprisonment range of the policy statements. The court stated it believed a prison term of 37 months "addresse[d] the issues of adequate deterrence and protection of the public." Because the sentence imposed was within the advisory range of the Guidelines policy statements for a revocation sentence, and Napper did not argue that such a sentence was unsound or that a departure was warranted, the district court's stated reasons were legally sufficient, and its sentence procedurally reasonable.

---

[17] *Rita v. United States*, 551 U.S. 338, 356 (2007).

[18] *Id.* at 357.

[19] *Id.*

Napper points out that the district court herein frequently relies on the identical reasons, deterrence and protection of the public, to justify its imposition of sentences in very different cases, and Napper cites to a long list of cases in which we have affirmed the district court's use of these reasons in those cases. Napper asserts that because those reasons are frequently used to impose sentences in different cases, the reasons can no longer provide reassurance that the district court's sentencing process is a "reasoned process." We disagree. Deterrence and protection of the public are specifically delineated by statute as appropriate factors to consider when imposing a revocation sentence.[20] Contrary to Napper's contentions, they are not "ill-fitting" in this case. Deterrence was an appropriate factor, especially considering that Napper twice returned to a life of crime after beginning supervised release. Furthermore, protection of the public was also relevant in light of Napper's return to drug distribution and violence during both terms of supervised release.

In sum, Napper fails to demonstrate any error, plain or otherwise, as to the procedural reasonableness of his sentence.

### 4. Timing of Revocation Hearing

Napper lastly argues that the district court failed to hold his revocation hearing within a reasonable time as required by Federal Rule of Criminal Procedure 32.1 and the Due Process Clause. He focuses exclusively on the earlier of his supervised release violations—his December 2012 commission of aggravated assault under Texas law. He asserts that his March 2018 revocation hearing was not held within a reasonable time of that violation

---

[20] *See* §§ 3553(a)(2)(B)–(C); 3583(e).

No. 18-10442

because the hearing occurred five and a half years later.[21] He asserts that even though he was in state custody from December 2012 to September 2016 for the aggravated assault conviction, his revocation hearing should have been held earlier than March 2018 because the district court could have easily requested his appearance in federal court for a revocation hearing. Furthermore, Napper argues that the delay impeded his right to due process because it undermined his ability to contest the violation and to proffer mitigating evidence and that such a long delay should be considered presumptively prejudicial.

Because Napper failed to object on these grounds in the district court, our review again is for plain error only.[22] Napper must show that (1) there was an error or defect in the district court proceeding; (2) the error was clear or obvious; and (3) the error affected his substantial rights.[23] If he makes this showing, we have the discretion to remedy the error, but should do so "only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings."[24] This court will not ordinarily find clear or obvious error when it has not previously addressed an issue.[25]

---

[21] Napper acknowledges that, under this court's precedent, Sixth Amendment speedy trial rights are inapplicable in supervised release revocation hearings and that due process rights to a speedy revocation hearing arise only when federal authorities take custody of a defendant for violating supervised release. *See Untied States v. Tippens*, 39 F.3d 88, 89–90 (5th Cir. 1994). Therefore, any claim that the timing of his revocation hearing violated the Sixth Amendment or his right to due process is foreclosed. However, Napper wishes to preserve these issues for further review.

[22] FED. R. CRIM. P. 52(b).

[23] *Puckett*, 556 U.S. at 135.

[24] *Id.* (internal quotation marks and citation omitted).

[25] *United States v. Evans*, 587 F.3d 667, 671 (5th Cir. 2009).

No. 18-10442

Napper argues that the plain text of Rule 32.1 compelled an earlier revocation hearing as to his December 2012 supervised release violation, the aggravated assault. He relies on Rule 32.1(b)(2) which provides: "**Revocation Hearing.** Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction." He acknowledges that under our precedent, supervised release revokees have a Fifth Amendment due process right to a speedy revocation hearing, but that the right generally arises only when federal authorities take custody of the defendant for violating supervised release.[26] He asserts that the right to a revocation hearing within a reasonable time under Rule 32.1(b)(2), however, is not dependent on whether the defendant is in federal custody or whether a federal warrant has been issued, and that the rule does not "exempt[] defendants in custody for another offense from the overarching standard of reasonableness."

Napper relies on the advisory committee notes to Rule 32.1 which require consideration of whether the defendant can be made readily available for the revocation court and whether the defendant waived appearance at the revocation hearing. He asserts that both of these factors weigh against the delay in his case because he was in Texas state custody during the delay, and the federal district court could have easily issued a habeas corpus writ to obtain his presence at a revocation hearing. He further states that he never waived appearance at a revocation hearing.

This court has not previously addressed whether the "reasonable time" requirement of Rule 32.1(b)(2) is determined based on when the supervised release violation was committed or when the defendant has been taken into federal custody for the violation. We note that the Second Circuit

---

[26] *See Tippens*, 39 F.3d at 89–90.

has interpreted "person" in Rule 32.1(b)(2) to mean "a person in custody for violating a condition of supervised release."[27] The Third Circuit also has held that the right to a timely revocation hearing under Rule 32.1(b)(2) "is measured from the time [the defendant] was taken into custody pursuant to the revocation arrest warrant."[28] Therefore, the reasonable time requirement in Rule 32.1(b)(2) may be no different from constitutional standards.[29] As stated above, this court will not ordinarily find clear or obvious error when it has not previously addressed an issue.[30] Therefore, Napper fails to demonstrate that the timing of his revocation hearing under Rule 32.1 was plainly erroneous.[31]

Finally, Napper argues that the delay in his revocation hearing violated his rights to due process because the delay undermined his ability to contest the supervised release violation and offer mitigating evidence. Napper is correct that this court has noted that "a delay in executing a violator's warrant may frustrate a probationer's due process rights if the delay undermines his ability to contest the issue of the violation or proffer mitigating evidence."[32] This rule, however, is inapplicable here in light of the

---

[27] *United States v. Jetter*, 577 F. App'x 5, 7 n.1 (2nd Cir. 2014); *United States v. Patterson*, 135 F. App'x 469, 475 (2nd Cir. 2005).

[28] *United States v. Goode*, 700 F. App'x 100, 103 (3rd Cir. 2017).

[29] The Eighth Circuit, however, has held that the "reasonableness" requirement of Rule 32.1 is different from the constitutional standards of reasonableness. *See United States v. Blunt*, 680 F.2d 1216, 1219 (8th Cir. 1982).

[30] *Evans*, 587 F.3d at 671.

[31] As Napper acknowledges, this court has held that due process rights to a speedy revocation hearing arise only when federal authorities take custody of a defendant for violating supervised release, and he does not argue that his revocation hearing was not held within a reasonable time under that standard.

[32] *Tippens*, 39 F.3d at 90 (citation omitted).

No. 18-10442

fact that Napper pled guilty to the aggravated assault, and he pled true to the Government's motion that the offense constituted a violation of his supervised release.

## III. Conclusion

Based on the foregoing, the district court's judgment imposing a 37-month revocation sentence is AFFIRMED.